UNITED STATES, Plaintiff,

v.

**Ricardo NAVA–SALAZAR, et al., Defendants.**

**No. 89 CR 531–2.**

United States District Court,
N.D. Illinois, E.D.

April 7, 1990.

On Motion to Reconsider April 10, 1990.

---

Marvin Leavitt, Leavitt & Schneider, Chicago, Ill., for Ricardo Nava–Salazar.

Terrence M. Jordan and Michael C. Goode, Chicago, Ill., for Guillermo Casas.

Lawrence S. Katz, Lawrence S. Katz, P.A., Miami Beach, Fla., for Darley Usma.

Reemberto Diaz, Diaz & Batista, P.A., Hialeah, Fla., for Juan Rodriguez–Garcia.

Fernando E. Heria, Hialeah, Fla., for Ramon Benjamin–Vasquez.

Patrick J. Foley, Asst. U.S. Atty., Chicago, Ill., for U.S.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

## I. INTRODUCTION

The defendants in this case have been charged with possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and with conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846. Pending are the government's proffer concerning admissibility of co-conspirator statements and motions in limine brought by defendant Guillermo Casas.

## II. CO–CONSPIRATOR HEARSAY

Defendant Darley Usma moved for the holding of an evidentiary hearing to determine the admissibility of any evidence which the government intended to submit pursuant to the co-conspirator statements exception to the hearsay rule, Fed.R.Evid. 801(d)(2)(E). On January 10, 1990, the Court ordered the government to submit a written proffer presenting the government's proof with respect to co-conspirator statements. *See United States v. Boucher*, 796 F.2d 972, 974 (7th Cir.1986). Pursuant to that order, the government has submitted a written proffer. Only defendant Casas has submitted a response to that proffer.

In order for evidence to be admissible pursuant to Rule 801(d)(2)(E), the government must prove by a preponderance of the evidence that a conspiracy existed, that the defendant and the declarant were members of the conspiracy, and that the offered statement was made during the course of and in furtherance of the conspiracy. *United States v. Hooks*, 848 F.2d 785, 794 (7th Cir.1988). *See also Bourjaily v. United States*, 483 U.S. 171, 175–76, 107 S.Ct. 2775, 2778–79, 97 L.Ed.2d 144 (1987). In determining whether the government has made the necessary showing, the Court may rely on both hearsay evidence and independent evidence. *See Bourjaily*, 483 U.S. at 181, 107 S.Ct. at 2782.

The Court finds at this time that the proffered evidence is sufficient to establish by a preponderance of the evidence that a conspiracy existed and that the members of the conspiracy included all of the defendants as well as an individual referred to as "Diego." The Court also finds that the

statements identified in the proffer were made in furtherance of the conspiracy. If there are additional statements, the Court will consider whether they were made in furtherance of the conspiracy when the government seeks to introduce them, if an objection is raised.

Casas objects that there is insufficient evidence tying him to the conspiracy. He argues that references to "Guillermo" are ambiguous and do not necessarily refer to "Guillermo Casas." The Court finds that this argument goes only to the weight of the evidence; it does not prevent the evidence from being considered in the first place. The government has proffered the following evidence that Casas was involved in the conspiracy: On June 18, 1989, Nava–Salazar told Agent Crawford that he would deliver 300 kilos of cocaine to "Guillermo;" on June 19, surveillance officers observed Casas drive irregularly in the vicinity of the Holiday Inn, park his car, and then speak with Nava–Salazar, who had emerged from the Holiday Inn. The officers then observed Casas retrieve a box from his car and carry the box into the hotel, accompanied by Nava–Salazar. Later, the officers observed Casas leave the hotel in the company of Nava–Salazar and Usma. Later, upon his arrest, Casas acknowledged that he had provided $45,000 to Usma and Nava–Salazar during the June 19 meeting at the Holiday Inn.[1] The Court finds that this evidence is sufficient to connect Casas with the conspiracy for purposes of Rule 801(d)(2)(E).

The Court conditionally finds that the statements offered by the government are admissible pursuant to Rule 801(d)(2)(E). This preliminary finding is subject to motions to strike at the close of the government's case if the government fails to sufficiently prove the facts stated in its proffer. *See United States v. Van Daal Wyk*, 840 F.2d 494, 496 (7th Cir.1988).

---

**1.** The government has also proffered the conversation between "Diego" and Agent Reina, as described *infra* at Part III.

## III.  TAPE–RECORDED EVIDENCE

■ Several of Casas' motions in limine concern two tape recorded conversations between Agent Reina and Diego and the government's transcriptions. The first passage at issue, from tape number two, reads as follows:

REINA  What happened then is that he gave us—he gave us—uh—uh—one hundred for expenses—

DIEGO  One hundred for expenses.

REINA  And when we arrive there at—the first point—at the place where the first panel is to receive the people to go on the tour—

DIEGO  Yes.

REINA [2]  —There he and Guillermo—

DIEGO  Yes.

REINA  —No, I mean Charles and Guillermo—

DIEGO  Yes.

REINA  —Handed sixty five.

DIEGO  How much did they give you total?

REINA  So, the total was—uh—uh—approximately—uh—one hundred and seventy.

DIEGO  One hundred and seventy total.

REINA  Total.

Casas maintains that the name referred to should be "Guiermo" rather than "Guillermo." This request is frivolous. The "ll" is silent anyway, so the two words (if "Guiermo" is indeed a word) would be pronounced the same. Defendant seems to be arguing that all words should be spelled phonetically in the transcript rather than spelled correctly. That argument is one of the most novel this Court has seen. Furthermore, the government represents that Agent Reina has affirmed that the name he stated in the conversation is "Guillermo." In any event, Casas' argument presents at most an issue of fact for the jury to consider if Casas wishes to raise it during trial. The Court will not require the transcript to read "Guiermo" instead of "Guillermo."

---

**2.** The government's original transcript identifies this speaker as Diego. Casas objected that the speaker was Reina, and the government agreed. The current transcript identifies the speaker as Reina.

■ Casas also seeks to exclude Agent Reina's reference to "Guillermo" because it was merely a statement by a government agent which was not adopted by the alleged co-conspirator with whom the agent was conversing. The statements of a government informant or agent to a defendant may be admissible for the truth of the matters asserted provided that the defendant has adopted the informant's or agent's statements, pursuant to Fed.R. Evid. 801(d)(2)(B). *United States v. Rollins,* 862 F.2d 1282, 1296–97 (7th Cir.1988). In order for such statements to be admissible for their truth, the conversation must evidence "a clear manifestation of intent to adopt." *Id.* at 1297 n. 10.

The Court initially reviewed the transcripts of the conversations at issue, but was unable to determine from the transcripts alone whether there was a clear manifestation of intent by Diego to adopt Reina's statements. Accordingly, the Court listened to the tape recordings themselves as well. Although the original conversations were held in Spanish, a review of the tape recordings allowed the Court to hear the intonations of the speakers. The Court reviewed the tapes along with the transcripts in order to place the statements at issue in context and to examine the inflections of the speakers' voices. Pursuant to this review, the Court is unable to conclude that Diego clearly manifested an intent to adopt Reina's statements concerning "Guillermo." Accordingly, the statements are not admissible for their truth, although they remain admissible to place in context the statements of Diego, which are admissible pursuant to Rule 801(d)(2)(E). *See Rollins,* 862 F.2d at 1296–97; *United States v. Gutierrez-Chavez,* 842 F.2d 77, 81 (5th Cir.1988); *United States v. Finley,*

708 F.Supp. 906, 910 (N.D.Ill.1989).[3] *It will be incumbent on defendants to submit to the Court a proposed limiting instruction should they desire one to be read to the jury before the introduction of this evidence.*

■ Casas also requests that evidence of a statement by co-defendant Nava–Salazar referring to "Guillermo" should be excluded because it cannot be determined whether this statement refers to "Guillermo Casas." Casas argues that "Guillermo" is a common name, and that it is the Spanish equivalent of "William." Accordingly, defendant argues, Nava–Salazar could have been referring to any of the many individuals who have the name "Guillermo" or "William."[4] The Court finds that whether the "Guillermo" referred to by Nava–Salazar is the defendant in this case concerns the weight of the evidence, not its admissibility. Casas' motion is therefore denied.

## IV. PREVIOUS SURVEILLANCE

Casas requests the exclusion of any evidence that government agents had surveilled Casas in previous narcotics investigations and that they recognized him for this reason when they observed him in connection with this case. The government represents that it will not seek to introduce this evidence at trial unless defendant opens the door,[5] and that the government will alert defendant and the Court prior to introducing the evidence. Accordingly, the motion will be denied without prejudice.

## V. GOVERNMENT WITNESSES

Casas seeks to bar the government from calling Luis Salazar or "Francis." The government represents that it does not in-

---

3. Even if the Court determined that there was a clear manifestation of intent to adopt, that would not establish the admissibility for their truth of Reina's statements, as adopted by Diego, against Diego's co-conspirators. *See United States v. Molina,* No. 88 CR 823–2, 1989 WL 85011 (N.D.Ill. July 19, 1989) (slip op. at 4–7) (adoptive admission and co-conspirator statement exceptions to hearsay rule may not build upon each other).

4. By this logic, if the co-defendant had referred to "Casas," he could be referring to any of the many "houses" which exist in the world, because "casas" is the Spanish word for "houses."

5. Specifically, the government states that "if Casas attacks the identification testimony of surveillance officers or otherwise "opens the door," the government fully intends to elicit this evidence to rehabitate its witnesses." The Court was previously unaware of this interesting government housing program.

tend to call either of these individuals as witnesses. Defendant's motion is therefore denied without prejudice because it is not ripe.

## VI. COUNSEL TABLES

Casas' next request is for the rearrangement of counsel tables so that the defense may sit closest to the jury, or alternatively so that both sides sit equidistant from the jury. Casas argues that "based upon unchallenged practice, the Government routinely commandeers the table nearest to the jury and thus achieves an unfair psychological advantage." This motion was denied in open court on March 20, 1990, in part because it was opposed by all other defendants and in part because the government has traditionally been given the option of sitting closest to the jury because it bears the burden of proof.

## VII. DRUG RECORDS

Casas requests that documents seized from his home by the government, which the government contends relate to drug transactions, be excluded because there is no foundation for considering them to be drug records. The government represents that it will lay a foundation at trial. Defendant's motion is denied at this time without prejudice.

## VIII. TELEPHONE RECORDS

Finally, Casas seeks to exclude records that certain telephone calls were made to and from telephone numbers associated with Casas and his co-defendants. Casas argues that the records do not establish that Casas himself was a party to the conversations, that his co-defendants were parties to the conversations, or that the calls were made in furtherance of a conspiracy. Although the records may not definitively establish these things, the Court cannot find that the records are irrelevant, especially at this point when the Court has not heard any of the evidence in the case. Casas' arguments concern the weight of the evidence, not its admissibility. This motion is denied without prejudice.

## ON MOTION TO RECONSIDER

Defendant Guillermo Casas requests that the Court reconsider its ruling in the April 8, 1990 memorandum opinion concerning the spelling of the word pronounced by Agent Reina in the tape recorded conversation ("Guillermo" versus "Guiermo"). On pages 4 to 5 of that opinion, the Court stated that the letter "ll" would be silent. Defendant disagrees with this statement, urging that the "ll" in Spanish is pronounced like the "lli" in the English "halliard," citing Velazquez, *A New Pronouncing Dictionary of the Spanish and English Languages* at 417 (1973). Velazquez states: "LL [el-lay], ... is the fourteenth letter of the Spanish alphabet; and though double in figure, it is considered simple in its sound.... It has the liquid sound of *lli* in halliard."

*Cassell's Spanish–English English–Spanish Dictionary* (1960) draws a distinction between pronunciation in Latin America and pronunciation in parts of Spain: "ll is treated (and alphabetized) as a single consonant. The sound in Castilian is very much like the English *lli* in *billiard*. In parts of southern Spain and in Latin America ll is pronounced like the English y in yet." *Cassell's* at xv.

In stating that the "ll" in Guillermo is silent, the Court was referring to the Latin American pronunciation of "ll" as similar to the English "y." In the context of the present dispute, if there is any difference in sound between "Gee-yerr-mo" ("Guillermo") and "Gee-err-mo" ("Guiermo"), it would be too subtle to make a practical difference. In stating that the "ll" is silent, the Court was simply noting that dropping the "ll" from the word "Guillermo" would not make an effective difference in the way the word is pronounced. By analogy, the "y" in the English word "beyond" is effectively silent because if it were dropped, the word "be-ond" would presumably sound no different; the "y" merely signals the beginning of a new syllable.

Furthermore, the Court notes that *Cassell's* lists "Guillermo" as a word which, along with "Guillelmo" and "Guillen,"

translates as "William." However, neither Valazquez nor *Cassell's* lists "Guiermo" as a word.

The Court can only conclude that the spoken word on the tape recording (to which the Court has listened) is properly transcribed as Guillermo. However, the Court also reiterates that defendant is free to present an alternative transcription to the jury. Defendant's motion for reconsideration is denied.