### UNITED STATES of America

v.

### Michael D. ANDREAS, Mark E. Whitacre, Terrance S. Wilson; and Kazutoshi Yamada, Defendants.

### No. 96 CR 0762.

United States District Court,
N.D. Illinois,
Eastern Division.

July 9, 1998.

See also, 1998 WL 417768.

*MEMORANDUM AND ORDER*

MANNING, District Judge.

This matter is before the court on outstanding pre-trial motions by the government and the defendants. First, the court will address the motions related to the admissibility and use of the tape-recorded conversations regarding the alleged conspiracy to violate 15 U.S.C. § 1 by fixing the price and volume of global lysine sales.

## I. The Defendants' Motions

### A. *Andreas' Motion to Exclude Inauthentic Audiotapes*

Defendant Andreas now moves to exclude three categories of audiotapes which allegedly contain the defendants' conversations at meetings held in furtherance of the conspiracy. The conversations were recorded by defendant Mark Whitacre while he was a cooperating witness for the FBI. Andreas contends that the government cannot lay the threshold evidentiary foundation for admitting the tapes because Whitacre is unable to testify as to the authenticity of the tapes.

Whitacre is now under indictment and has invoked his Fifth Amendment privilege against self-incrimination. As such, he is unavailable to testify as to whether the so-called Whitacre tapes truly and accurately reflect the conversations contained on the tapes.

Andreas' motion separates the Whitacre tapes into three categories: (1) tape recordings of Whitacre's conversations with Andreas and/or Wilson only; (2) all other tape recordings made by Whitacre, and; (3) tape recordings made by FBI agents, with Whitacre's consent, while the agents simultaneously monitored Whitacre's conversations.

Andreas seeks to exclude group 1 as a matter of law, asserting that Whitacre is the only individual capable of authenticating the tapes. With respect to groups 2 and 3, Andreas argues that an evidentiary hearing is

required to determine whether the government has sufficient evidence to authenticate them. The government has stated that it shall authenticate groups 2 and 3 with testimony of the FBI agents and co-conspirators who respectively participated or simultaneously observed the conversations. For the reasons set forth below, Andreas' motion is denied in its entirety.

■■■ Sound recordings are admissible in evidence provided the proponent lays the proper evidentiary foundation by authenticating that the recordings are what the proponent claims. *See* Fed.R.Evid. 901(a); *Stringel v. Methodist Hosp. of Indiana, Inc.,* 89 F.3d 415, 420 (7th Cir.1996); 5 Weinstein & Berger, WEINSTEIN'S FEDERAL EVIDENCE § 901.01. In the Seventh Circuit, the proponent has the burden of showing that the tape is a "true, accurate, and authentic recording of the conversation, at a given time, between the parties involved." *United States v. Faurote,* 749 F.2d 40, 43 (7th Cir.1984). Ultimately, the jury determines whether the Whitacre tapes are authentic, but only after the court initially finds that the tapes are conditionally relevant under Federal Rule of Evidence 104(b).[1] *See United States v. Branch,* 970 F.2d 1368, 1370 (4th Cir.1992).

### 1. *Group 1*

■■■ Andreas argues that the group 1 tapes are inadmissible because the government, without Whitacre's testimony, does not have clear and convincing evidence that the tapes accurately reflect the conversations which transpired between the defendants and their alleged co-conspirators. *See generally Stringel,* 89 F.3d at 420, *quoting United States v. Welch,* 945 F.2d 1378, 1383 (7th Cir.1991) (holding authentication of real evidence must be demonstrated with clear and convincing evidence).

In response, the government contends that the "rational juror" test governs the court's 104(b) determination and requires the court to conditionally admit group 1 if it finds that any rational juror could possibly conclude that they are authentic. *Ricketts v. City of*

Hartford, 74 F.3d 1397, 1411 (2d Cir.1996). Moreover, the government proposes that *Stringel* relaxes its method of establishing authenticity by not requiring testimony of eyewitnesses who can attest to the events allegedly contained on the tapes. Under the given circumstances, the court agrees.

After thoughtful reflection the court concludes that the clear and convincing standard for authentication is consistent with the rational juror test. The court construes 104(b) to require the court to conditionally admit the tapes if, upon clear and convincing evidence, it concludes that a rational juror could find the tapes to be authentic. Whitacre's unavailability to corroborate the authenticity of the tapes is relevant as to their evidentiary weight, but does not bar admission.

Granted, the consistent and prevailing Seventh Circuit trend for authenticating recorded conversations has been to have participants who observed and/or recorded the conversations testify as to whether the tapes accurately reflect the events as the tapes purport. *See e.g., United States v. Welch,* 945 F.2d 1378, 1383 (7th Cir.1991) (conversation participant's testimony); *United States v. Carrasco,* 887 F.2d 794, 801 (7th Cir.1989) (government informant's testimony); *United States v. Briscoe,* 896 F.2d 1476, 1490 (government agents' and co-defendants' testimony).

*Stringel* renounced the use of rigid authentication formulae without, unfortunately, stating whether the proponents are limited to authenticating tapes exclusively through direct testimony. Of course, one could argue, as defendant Andreas does here, that *Stringel* imposes a direct evidence requirement because it relies in part on *United States v. Blakey,* 607 F.2d 779, 787 (7th Cir.1979) which established the clear and convincing standard for authenticity which led to authentication being made in virtually all cases thereafter through direct testimony.

Absent an explicit holding from the Seventh Circuit requiring that a foundation be laid by direct testimony of a first-hand ob-

---

1. Federal Rule of Evidence 104(b) provides in pertinent part:

"When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding the fulfillment of the condition."

server, the court is not willing to blindly follow tradition and exclude arguably reliable evidence merely because Whitacre's direct testimony is unavailable.

While tradition suggests direct testimony is necessary, the developing trend in the law has been to conditionally admit audiotapes if the proponent produces circumstantial evidence indicative of the tapes' authenticity. In *United States v. Bright,* 630 F.2d 804, 820 (5th Cir.1980), the First Circuit affirmed authentication by a testifying agent who did not hear the conversations at issue but observed, from afar, the recording agent initiate the conversation with the defendant. The First Circuit reasoned that the tapes were sufficiently reliable since the testifying agent observed the parties conversing and immediately took custody of the tapes, thereby ensuring they were substantially the same as when made. *See also United States v. Fuentes,* 563 F.2d 527 (2d Cir.1977) (holding testimony of an agent who did not observe the conversations in question was sufficient since he immediately took custody of the tapes after conversations ended).

Indeed, evidence of chain of custody coupled with other independent corroborative evidence has been sufficient to submit the tapes to the jury which then makes the ultimate authentication determination. In *United States v. Khorrami,* 895 F.2d 1186, 1195 (7th Cir.1990), the testimony of a victim, though not present during the recording, was deemed reliable enough to authenticate tapes of the defendant's threats because the victim could attest to the reliability of the recording device while the defendant's phone records indicated that the threatening phone calls were made from the defendant's residence. The victim's motive to testify falsely goes to credibility not admissibility.

Here, the government proposes to introduce numerous forms of circumstantial evidence which it contends provide sufficient indicia of the tapes' reliability, including: (1) FBI agents who will testify regarding the recording devices used, the chain of custody of the tapes, and identify the defendants' voices on the tapes; (2) intrinsic evidence of authenticity because the group 1 tapes contain continuous conversations related to the conspiracy which is unlikely to be confused or misinterpreted for innocuous conversation;

(3) testimony of co-conspirators whose voices are captured either in groups 2 and 3, who refer to conversations contained in group 1, and; (4) expert testimony which the government asserts will establish that all of the Whitacre tapes are genuine unaltered contemporaneous recordings of the conversations thereby ensuring their accuracy and reliability.

The court is convinced that this circumstantial evidence taken as a whole is sufficiently reliable to submit the authenticity issue to the jury. The co-conspirators' statements in groups 2 and 3 are admissible under Federal Rule of Evidence 801(d)(2)(E) and independently corroborate group 1 by referring to conversations contained in the group 1. *See United States v. O'Connell,* 841 F.2d 1408, 1420–21 (8th Cir.1988) (using inculpatory co-conspirator statements in subset of tapes was enough to corroborate other tapes).

Expert testimony can be equally persuasive. The government and defense experts can present their competing opinions as to whether the tapes were altered or manipulated as the defendants have previously alleged. The tape technology involved here is best left to the respective experts whose credibility can then be determined by the jury.

Finally, the FBI agents can testify as to the chain of custody, identify the defendants' voices in the group 1 tapes, and describe the recording protocol used by Whitacre. Of course, the defendants will be given ample latitude in cross-examining the agents' handling of the tapes.

Accordingly, the group 1 tapes are conditionally admitted provided the government produces authenticating evidence in a manner consistent with their representation, as outlined above.

### 2. *Groups 2 and 3*

The government proposes to authenticate groups 2 and 3 through the testimony of alleged co-conspirators. As previously stated and as defendant Andreas concedes, individuals who participated or observed the conversation have an adequate basis of knowledge to authenticate audiotapes. *See*

*United States v. Brown,* 136 F.3d 1176, 1182 (7th Cir.1998).

The government's *Santiago* proffer makes it abundantly clear that the government has and will call co-conspirators to authenticate groups 2 and 3. There is no reason to convene an evidentiary hearing to authenticate groups 2 and 3. Accordingly, these tapes shall be conditionally admitted so long as the government produces authenticating evidence in a manner consistent with their representation, as outlined above.

### B. Andreas' Motion to Exclude From Evidence Any Video or Audiotapes of the October 25, 1993 Irvine, California Meeting

Defendant Andreas moves to exclude tapes recorded by defendant Mark Whitacre, based upon the violation of the defendants' Sixth Amendment Confrontation Rights, and; to exclude defendant Mark Whitacre's statements made to the government pursuant to *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

For the reasons set forth below, defendant Andreas' motion to exclude the Irvine tapes is denied. The motion to exclude the Whitacre tapes for violation of the Sixth Amendment Confrontation Clause is denied. Defendants' motion pursuant to *Bruton* to exclude Whitacre's statements made to the government is taken under advisement. The government is directed to request a side bar prior to attempting to elicit such statement, at which time the court will rule after having considered the statement in its proper context.

### 1. Irvine, California Meeting

█ The government seeks to introduce covert audio and videotape surveillance of an October 25, 1993 Irvine, California meeting (Irvine tapes) held in furtherance of the alleged price-fixing conspiracy. Defendant Andreas moves to suppress the Irvine tapes, arguing that admitting only the conversations which the government selectively taped violates Federal Rule of Evidence 106[2] because these selective portions distort the context of the meetings which in turn will mislead the jury. Defendant Andreas mis-

construes Rule 106 and essentially rehashes his selective taping and destruction of evidence motion which the court previously denied.

Federal Rule of Evidence 106 provides:

When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

Andreas, as the proponent of the additional evidence, must show that the evidence sought to be introduced is relevant and will clarify or explain portions of the recording offered by the government. *United States v. Glover,* 101 F.3d 1183, 1189–90 (7th Cir.1996), *citing United States v. Walker,* 652 F.2d 708, 710 (7th Cir.1981). Andreas argues that the tapes must be suppressed because he is unable to show the context of the Irvine meetings because all of the conversations were not recorded. Here, the Irvine tapes, rather than the unrecorded conversations which transpired at the meeting, constitute the "recorded statement or part thereof" for Rule 106 purposes. There are no other written or recorded statements memorializing the Irvine meeting. Thus, if the government introduces a portion of the tapes, then defendant Andreas' remedy is to offer relevant additional portions of the existing tapes to show the context of the conversations and to avoid misleading or confusing the jury. *United States v. Walker* 652 F.2d 708 (7th Cir.1981); *United States v. Sweiss,* 814 F.2d 1208 (7th Cir.1987). Assuming relevance is established, the court must determine whether the additional portions of the statements: (1) explain the admitted evidence; (2) place the admitted evidence into context; (3) will avoid misleading the jury, and; (4) insure a fair and impartial understanding of the evidence. *United States v. Haddad,* 10 F.3d 1252, 1259 (7th Cir.1993); *United States v. Velasco,* 953 F.2d 1467, 1475 (7th Cir.1992). If these requirements are satisfied, the court will permit additional portions of the Irvine tapes to be played before the jury.

2. Andreas' brief erroneously cites to a non-existent Fed.R.Civ.P. 106. The court presumes that he intended to cite Fed.R.Evid. 106 and will treat the motion as such.

Andreas erroneously asserts that the unrecorded conversations fall within Rule 106 because they will present the complete context of the Irvine tapes. Rule 106 is inapplicable since the purported statements to which Andreas alludes were not written or recorded. Moreover, the relevance, if any, of the unrecorded portions of the Irvine meeting is based merely upon Andreas' self-serving conjecture and speculation of selective taping and destruction previously rejected by this court. As noted by the court in its April 16 order, the government was not obliged to record every conversation that transpired. The government's failure to record portions of such an important meeting, while conceivable, is relevant to credibility to be determined by a jury, but does not warrant suppression. The Irvine tapes are no different from the other tapes made by Whitacre. Accordingly, Andreas' motion to suppress the Irvine tapes is denied.

### 2. *Confrontation Clause*

The defendants move to suppress the Whitacre audiotapes, arguing that the tapes contain hearsay and Whitacre's unavailability to be cross-examined denies them the opportunity to challenge the circumstances in which they were created. The government argues that the tapes are admissible as to defendants Andreas and Wilson as co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E), and are nonhearsay as to Whitacre because his statements will be offered to show the defendants' responses to Whitacre's statements to place the defendants' co-conspirator statements into context.

Neither the Confrontation Clause nor the hearsay rules preclude the admission of the tapes. The statements made by defendants Andreas and Wilson are admissible as co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E) because they were made during and in furtherance of the conspiracy. *Bourjaily v. United States* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987).

Similarly, Whitacre's statements, as used against the defendants, do not violate the Confrontation Clause. The Confrontation Clause guarantees the defendants the right to cross-examine the credibility and reliability of witnesses who testify against them at trial. *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

Defendants have no right to cross-examine Whitacre unless he testifies for the government at trial nor are his out of court statements being used against the defendants at trial to prove the truth of the matter asserted. Rather, assuming that Whitacre made incriminating statements to which the defendants responded, those statements are admissible as verbal acts or adoptive statements to show how the defendants responded to Whitacre, thus placing the conversations into context. *See United States v. Davis,* 890 F.2d 1373 (7th Cir.1989); *United States v. Nava–Salazar,* 735 F.Supp. 274 (N.D.Ill. 1990); *United States v. Finley,* 708 F.Supp. 906, 911 (N.D.Ill.1989) (Rovner, J.). Whitacre's statements are relevant only to show how the defendants responded to Whitacre regardless of their truth. Thus, they are not hearsay and do not implicate the defendants' rights guaranteed by the Sixth Amendment's Confrontation Clause. *Davis,* 890 F.2d at 1380, *citing United States v. Rollins,* 862 F.2d 1282, 1297 (7th Cir.1988).

The defendants creatively argue that the audiotapes themselves, rather than the statements they contain, constitute Whitacre's out of court statements, and thus implicate the defendants' confrontation rights. The defendants argue that, by selectively taping conversations to manipulate the defendants' statements, Whitacre nonverbally asserted to the government that the defendants and their co-conspirators are guilty and that the tapes are being offered to prove this purported assertion.

In *United States v. Hensel,* 699 F.2d 18, 35 (1st Cir.1983), the First Circuit held that nonverbal conduct by an individual qualifies as hearsay if the declarant intended the conduct to be accepted for its truth. The court reasoned that if the defendant could show that the declarant had "stag[ed] an elaborate charade to implicate the defendant ..." then the nonverbal conduct could qualify as an assertion. *Id.* at 35. The defendants, however, bear the burden of establishing the

existence of that charade. *Id.* As previously addressed in the April 16 order, there is no conclusive evidence that Whitacre altered or destroyed tapes in order to manipulate the alleged conspiratorial conversations. Again, the circumstantial evidence supporting those allegations is relevant as to credibility, but does not bar admission of the tapes. Accordingly, the motion to suppress the Whitacre tapes for violation of the Confrontation Clause is denied.

### 3. *Defendants' Motion to Exclude Whitacre's Hearsay Statements*

Andreas and Wilson move to suppress Mark Whitacre's statements to the government made during the 2½ year investigation of the alleged price-fixing conspiracy, arguing that the statements violate the *Bruton* doctrine. The government contends that Whitacre's statements do not violate *Bruton* because they will not be offered to prove the truth of the matter asserted, i.e., that the defendants were engaging in price-fixing. To the extent that Andreas and Wilson seek to suppress Whitacre's statements contained on the Whitacre tapes, the motion is denied, *see supra* § I ¶ B, 2.

In addition to his taped statements, Whitacre made approximately 103 statements to the FBI during the covert investigation. The government contends that the statements are admissible to provide background or to explain the conduct of the investigation, and not to prove that the defendants were involved in the alleged conspiracy.

In *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court held that confessions which, on their face, incriminate a co-defendant are inadmissible in a joint criminal trial unless the co-defendant has the opportunity to cross-examine the defendant who confessed. *Bruton* is inapplicable to nonhearsay statements being offered to show that the statement was made and not for its truth. *Dutton v. Evans,* 400 U.S. 74, 87–88, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). The government avoids *Bruton* by purportedly offering Whitacre's statements to explain the context of the covert criminal investigation.

Generally, informant statements are not hearsay if they are used to explain why the government investigation was undertaken.

*United States v. Mancillas,* 580 F.2d 1301, 1309 (7th Cir.1978); *United States v. Lazcano,* 881 F.2d 402, 407 (7th Cir.1989). Notwithstanding a legitimate nonhearsay use, informant statements are inadmissible if their prejudicial effect outweighs their probative value under Federal Rule of Evidence 403. *Mancillas,* 580 F.2d at 1310. When making the Rule 403 determination, the court must consider whether the repetition, substance, and context of the statements when admitted at trial would create a prejudicial effect that outweighs their probative value. *United States v. Lovelace,* 123 F.3d 650, 652 (7th Cir.1997).

In *United States v. Martinez,* 939 F.2d 412, 414–15 (7th Cir.1991), the Seventh Circuit held that informant tips which specifically identified the defendant as an individual who engages in criminal activity created too great a risk of unfair prejudice to the defendant and warranted exclusion under Rule 403. Most recently, in *United States v. Williams,* 133 F.3d 1048, 1052 (7th Cir.1998), the Seventh Circuit held that the government can introduce evidence that it spoke with informants to show the context of the investigation, but disclosing the contents of the informant's statement that incriminates the defendant will prejudice the jury and is inadmissible hearsay. In *Williams,* the confidential informant directly identified the defendant as a bank robber to directly implicate him in the crime. The Seventh Circuit concluded that the risk that the jury would use the testimony as substantive evidence outweighed its use to explain how the government conducted its investigation.

Here, the government seeks to introduce 103 informant statements; a number which far exceeds a single tip or isolated pieces of information which trial courts usually permit to establish the context and nature of conspiracy investigations. *See e.g., United States v. Sanchez,* 32 F.3d 1002 (7th Cir.1994) (discussing a single informant tip to police regarding cocaine conspiracy); *United States v. Martinez,* 939 F.2d 412 (7th Cir.1991) (discussing informant tip implicating defendant's involvement in cocaine conspiracy). Thus, the repetitive nature of the evidence could unduly prejudice Andreas and Wilson.

Ultimately, however, the relevance of any of the particular Whitacre statements is unknown until offered at trial. As such, the admissibility of these statements is an evidentiary matter best resolved on a question-by-question basis because the court can conceive of instances where some statements are admissible while others are not. Accordingly the court takes this motion under advisement and will rule on these evidentiary issues as they arise at trial.

### C. Defendant Andreas' Motion to Present Edited Tapes

██ Defendant Andreas, pursuant to Federal Rule of Evidence 403, moves to edit the taped conversations that the government intends to play at trial to remove all expletives and "offensive language," arguing that the prejudicial effect of the language outweighs any probative value that the language has to Andreas' degree of culpability or lack thereof of the crime. The government opposes the motion, arguing that the expletives will not substantially prejudice Andreas and even assuming they did, the probative value of the tapes outweighs any prejudice; specifically, the government asserts that the language shows Andreas' intent to price-fix.

██ The court, in its discretion, may edit highly offensive language to mitigate *substantial* prejudice to the defendants. *United States v. Frasch*, 818 F.2d 631, 634 (7th Cir.1987). The court may delete or substitute the offensive language if such action does not destroy the probative value of the tapes. *Frasch*, 818 F.2d at 634. Alternatively, if editing detracts from the probative value, the court may question the venire panel using the actual language to determine whether the language is so inflammatory that its admission would substantially prejudice Andreas. *Id.*

After reviewing Andreas' proffer of offensive language, the court finds that the profanity in question is not highly inflammatory nor likely to substantially prejudice Andreas. The twelve page proffer contains six expletives; only four are spoken by Andreas. While the court does not condone the use of such language, it recognizes that they are words which are frequently uttered in this society and with which the jury members are fully familiar. Here, unlike the highly in-flammatory racial epithets presented in the cases upon which Andreas relies, the court seriously doubts that the jury will become so disturbed by the language that they would convict regardless of other evidence of Andreas' guilt or innocence. *See e.g. United States v. Schweihs*, 971 F.2d 1302, 1314 (7th Cir.1992); *Frasch*, 818 F.2d at 634.

Moreover, the court agrees with the government that in at least one instance, the profanity is necessary to understand the context of Andreas' statements which would arguably negate any claim that he lacked intent to engage in the alleged price-fixing. Accordingly, Andreas' motion to edit the tapes to delete offensive language and his request to question the jury with respect to the offensive language are denied.

### D. Andreas' Motion to Exclude 404(b) Evidence

██ Andreas moves to suppress evidence regarding the citric acid market arguing that it is inadmissible under Federal Rule of Evidence 404(b). This motion turns on whether testimony of ADM executive Barrie Cox and tape-recorded conversations regarding the alleged citric acid conspiracy can be used against Andreas. The court finds that such evidence is admissible. This ruling is limited to the citric acid market since the government has not specified its intent to introduce evidence of other markets.

Andreas contends that the citric acid evidence is inadmissible under Rule 404(b) because: (1) it is relevant only to show his propensity to participate in the lysine conspiracy; (2) there is no similarity between the citric acid and lysine markets and therefore is irrelevant, and; (3) the government has not sufficiently shown that the citric acid conspiracy or "other crimes" exist or that Andreas participated. Alternatively, assuming that the alleged citric acid conspiracy is admissible under 404(b), Andreas asserts it must be excluded under Rule 403 because its prejudicial effect outweighs its probative value.

The government contends that the citric acid evidence is not governed by Rule 404(b) because it is direct evidence of the alleged lysine conspiracy, not the alleged citric acid conspiracy. Assuming Rule 404(b) applies,

the government asserts that the evidence will show that the alleged citric acid conspiracy is probative of the existence of the lysine conspiracy since the evidence will show that Andreas sought to model the lysine conspiracy on the citric acid scheme thereby negating any claim that Andreas lacked knowledge or specific intent to conspire.

■ Direct evidence of other crimes, wrongs, or acts is admissible to prove motive, opportunity, intent, but never to show a propensity to conform with criminal behavior. *United States v. Sophie,* 900 F.2d 1064, 1076 (7th Cir.1990). For Rule 404(b) purposes, citric acid evidence is admissible if it is "intricately connected" with the lysine conspiracy, arose from the same transaction or series of transactions related to the lysine conspiracy, or if it is necessary to explain the context of the lysine conspiracy. *United States v. Roberts,* 933 F.2d 517, 520 (7th Cir.1991). *See also United States v. Adames,* 56 F.3d 737, 742 (7th Cir.1995).

After reviewing the government's proffer of evidence, the court finds that the citric acid evidence is admissible. The government has produced transcripts of three alleged meetings between Andreas, Whitacre, and Wilson in which they arguably discuss price-fixing activity. Indeed, it is reasonable to interpret the conversation to suggest that the defendants sought to model the lysine conspiracy on the citric acid conspiracy. Andreas is hard pressed to claim that Cox's testimony is inadmissible as another crime since Andreas allegedly referred to the very activity about which Cox is expected to testify.

The striking similarities between the citric acid and lysine conspiracies coupled with the closeness in time between the alleged schemes is probative of intent to price-fix; both are feed additives produced and marketed worldwide by ADM. The citric acid conspiracy allegedly occurred between 1991 through 1995 with the lysine conspiracy overlapping from 1992 through 1995; ADM executives allegedly participated in both conspiracies. The defendants will have the opportunity to argue to the jury that the meetings were innocuous and part of legitimate business discussions related to the ECAMA lysine trade association.

■ To the extent that Andreas contends that the citric acid evidence would unfairly prejudice his defense in violation of Rule 403, the argument is without merit. Admitting the citric acid evidence will undoubtedly prejudice Andreas, but Rule 403 only requires exclusion for unfair prejudice. *See* 2 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE § 403.04[1]. Andreas must show that the evidence invokes horror or other emotional responses causing the jury to base its decision on something other than the evidence. *Adames,* 56 F.3d at 742 *citing United States v. Peters,* 791 F.2d 1270, 1295 (7th Cir.1986) *cert. denied* 479 U.S. 847, 107 S.Ct. 168, 93 L.Ed.2d 106 (1986).

Accordingly, the government may introduce evidence regarding the alleged citric acid conspiracy.

### E. Defendants' Motion for Severance

Andreas moves for a severance from Wilson, while they both move for severance from Whitacre. Andreas argues that severance from Wilson is necessary to prevent unfair prejudice since the government intends to use evidence regarding the alleged citric acid conspiracy against Wilson which the jury will improperly use against Andreas too. With respect to Whitacre, Andreas and Wilson argue that he is a co-defendant only in name and that continued joinder will force them to wage a two-front defense against Whitacre and the government which violate their rights to a fair trial, especially since they speculate Whitacre's defense strategy is antagonistic to their strategies. The court first addresses the standards governing severance and then the respective motions.

### 1. Standards governing severance

■ Properly joined defendants may secure severance "[i]f it appears that a defendant ... is prejudiced by a joinder of offenses or of defendants." *See* Fed.R.Crim.P. 14. Severance is proper only if there is a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States,* 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). Such a risk of prejudice could arise when there is a

substantial disparity of evidence between the defendants. *United States v. Moya–Gomez,* 860 F.2d 706, 765 (7th Cir.1988). Even if a joint trial presents a risk of prejudice, that prejudice can be cured by instructing the jury to consider evidence only for a particular purpose or against a specific defendant. *United States v. Richardson,* 130 F.3d 765, 777 (7th Cir.1997). Indeed, limiting instructions are presumed to cure the prejudicial effect, if any, a joint trial has upon an individual defendant. *Zafiro,* 506 U.S. at 539, 113 S.Ct. 933.

■ In considering a motion for severance, the court presumes that co-conspirators who are indicted together are properly tried together, *United States v. Ramirez,* 45 F.3d 1096, 1100 (7th Cir.1995). Moreover, joint trials conserve valuable judicial resources by avoiding duplicitous litigation when the charged indictment arises from the same transactions or occurrences which will be proven by the same evidence. *See United States v. Diaz,* 876 F.2d 1344, 1357 (7th Cir.1989).

### 2. *Andreas' severance from Wilson*

The government asserts that Andreas has not demonstrated that a joint trial will unfairly prejudice him or infringe upon a specific trial right. Moreover, the government argues that since its evidence related to the alleged citric acid conspiracy is admissible against both Andreas and Wilson, severance will only waste judicial resources through duplicitous trials. The court agrees and the motion to sever is denied.

Andreas' motion is premised on a misstatement of fact. Contrary to Andreas' assertions, the government represents that it intends to introduce evidence of the alleged citric acid conspiracy—for the limited purpose of establishing the lysine scheme—against both Andreas and Wilson. The government represents that it will introduce tape-recorded conversations in which Andreas suggests that the lysine conspiracy be modeled after the citric acid conspiracy.

Since, based on the government's representation, the citric acid evidence would be used against both Andreas and Wilson, Andreas cannot claim that a joint trial will cause the jury to confuse the evidence and errone-

ously convict him based on evidence introduced solely against Wilson. Furthermore, Andreas fails to articulate which, if any, of his specific trial rights would be violated if he were tried jointly with Wilson.

■ Apart from the purported prejudice of the citric acid evidence, Andreas also argues that a joint trial with Wilson will prejudice him by prolonging his trial. Even assuming that the defendants were tried separately, the government presumably would produce almost all of the exact same evidence and theories of liability and culpability against both defendants which arise from the same transactions and events surrounding the lysine conspiracy. Severance would prolong rather than expedite the resolution of this matter. In short, severance would beget delay without any objective benefits to the parties or the court. Accordingly, Andreas' motion for severance is denied.

### 3. *Defendants severance from Whitacre*

Defendants can choose their friends and enemies, but rarely are permitted to choose their co-defendants; this instance is no different. The defendants argue that continued joinder with Whitacre will unfairly prejudice their right to a fair trial based on their speculation that Whitacre will raise mutually antagonistic defenses and because the government does not intend to call Whitacre as a witness which the defendants contend precludes them from cross-examining him.

Andreas and Wilson have not adequately shown that a specific trial right will be compromised absent severance nor do they articulate how continued joinder with Whitacre will prevent the jury from making a reliable judgment about their guilt or innocence. *Zafiro,* 506 U.S. at 539, 113 S.Ct. 933. They allude to the fact that they will be unable to cross-examine Whitacre and that he is a de facto prosecutor who will shift blame from himself to Andreas and Wilson. Neither argument justifies severance.

The court construes Andreas and Wilson as claiming that their confrontation rights are being violated since they apparently will be unable to cross-examine Whitacre. The

confrontation clause, however, is inapplicable since it appears that Whitacre will not be testifying. *See Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

■ The defendants' mutually antagonistic defenses argument, when reduced to its essence, speculates that Whitacre will claim that Andreas and Wilson conspired while he innocently taped on behalf of the government. Assuming *arguendo* that this speculation turns out to be the case, the defenses are not antagonistic because all of the defendants, albeit for different reasons, are claiming they did not participate in the alleged conspiracy; Whitacre because he was cooperating with the government while Andreas and Wilson because they claim the prosecution is the result of a conspiracy to fabricate evidence to falsely incriminate them for conducting legal business transactions.

Severance is not required where, as here, one co-defendant's defense is premised on the existence of a conspiracy which his co-defendants deny ever existed. Merely because Whitacre claims that an alleged lysine conspiracy existed is inconclusive as to whether the government can actually prove that Andreas and Wilson were participants. Hence, the jury's acceptance of one defense cannot preclude it from accepting the other. *See e.g., United States v. Ziperstein*, 601 F.2d 281, 285–86 (7th Cir.1979). Accordingly, having failed to meet either of the *Zafiro* requirements, the motion to sever from Whitacre is denied. Of course, Andreas and Wilson can move for a limiting instruction at trial if, at that time, it appears that the jury could improperly consider evidence admissible only against Whitacre to determine whether Andreas and Wilson are guilty or not guilty.

### F. Defendants' Motion to Exclude Evidence of or Reference to the Guilty Pleas of Alleged Co–Conspirators or to Related Civil Litigation

The government now seeks to admit the guilty pleas, plea agreements, nonprosecution commitments, and orders compelling testimony of ADM and individual co-conspirators. It also wishes to elicit testimony during direct examination about these arrangements and comment on them during its opening statements. The government promises not to refer to ADM's settlement of the lysine-related civil litigation provided the defendants agree to do the same.

The defendants do not contest the government's position as to ADM's civil settlement. As such, the court assumes that the parties agree all evidence related to the civil settlement is to be excluded. Nor do the defendants challenge admitting the individual co-conspirators' guilty pleas, admitting they plan to impeach their alleged co-conspirators' testimony by exposing motive and bias stemming from the plea agreements and consequent immunity from prosecution.

The parties only contest whether the ADM corporate guilty plea/plea agreement is admissible. Defendants Andreas and Wilson assert that the ADM plea/plea agreement will prejudice them by persuading the jury to convict based on guilt by their association with ADM, and as such is inadmissible.

The government wants to soften the sting of cross-examination by disclosing that many of its witnesses are motivated to testify, in part, due to a plea/plea agreement which protects them from prosecution. Alternatively, the government asserts that the agreements could be used to impeach the witnesses if they should express favoritism toward the defendants during direct examination. The government contends that a limiting instruction will prevent the jury from using the guilty pleas as substantive evidence of the defendants' guilt.

■ Prosecutors can, on direct examination, elicit testimony regarding the witness' plea/agreement and actually introduce the plea into evidence, *United States v. Mealy*, 851 F.2d 890, 899 (7th Cir.1988), but only for the limited purpose of establishing witness credibility and not as substantive evidence of the defendants' guilt. *See United States v. Davis*, 838 F.2d 909, 917 (7th Cir.1988). The rationale for this practice is to minimize the shock or confusion that may occur if the plea agreement was not divulged until cross-examination. *United States v. LeFevour*, 798 F.2d 977, 984 (7th Cir.1986). The same is true for immunity agreements, sentencing recommendations, or other prosecutorial

"deals" which could explain the witness' motive to testify. *See generally United States v. Machi*, 811 F.2d 991, 1003 (7th Cir.1987); *United States v. McNeal*, 77 F.3d 938, 945 (7th Cir.1996).

Admitting ADM's corporate plea agreements, however, raises serious concerns of unfair prejudice in that the jury may be unable to separate ADM from the individual ADM executives on trial. The court takes this motion under advisement to be decided at trial after hearing the context in which the evidence is offered. Accordingly, the government shall not make any reference to the ADM corporate plea agreement during opening statements.

## II. The Government's Consolidated Motions *In Limine*

### A. Motion to Preclude Evidence or Argument Regarding Alleged Government Misconduct in the Course of the Investigation

 In its April 16, 1998 order, the court denied the defendants' motion to exclude tapes for alleged selective taping and destruction, holding that the reliability of the tapes was a factual issue to be determined by the jury. The court concluded that the defendants would be given ample opportunity to cross-examine the government's witnesses—particularly the FBI—with respect to the manner in which it obtained the Whitacre tapes, and other covert audio and video tapes made during the course of the investigation.

The court emphasized that the defendants could raise evidence and arguments regarding possible destruction of evidence and selective taping for the limited purpose of impeaching the reliability of the evidence, but not to raise an "outrageous conduct" defense which is not recognized in the Seventh Circuit. *See United States v. Boyd* 55 F.3d 239, 241 (7th Cir.1995).

The government, apparently not satisfied with the April 16 order, now ostensibly moves for reconsideration, requesting that the court narrow the scope of admissible evidence by excluding evidence or argument relating to: (1) the applicability of, and the FBI's adherence to, certain FBI guidelines regarding taping and "suitability" requirements for cooperating witnesses; (2) the

government's motivation or subjective intent during the conduct of the investigation; (3) conversations between government personnel that occurred outside the defendants' presence; (4) alleged failure to undertake certain investigative steps during the course of the investigation, and (5) the state of the government's knowledge that Whitacre was unreliable, including references to polygraph evidence, consultations between the investigating agents assigned to the FBI's Behavioral Science Unit (BSU). The motion is denied.

The thrust of the government's argument is to quote Judges Posner and Zagel in which they respectively opined that defendants often attempt to escape conviction by arguing that the government's conduct was unfair or improper. *Boyd*, 55 F.3d at 241 (Posner, J.); *United States v. Griffin*, 867 F.Supp. 1347, 1347 (N.D.Ill.1994) (Zagel J.). Neither Judges Posner nor Zagel ever stated, as the government implies, that police or governmental misconduct is irrelevant. Instead, Judge Posner held that such evidence must be used for some relevant purpose, i.e. to determine the reliability and credibility of evidence, and not to propose dismissal based on misconduct alone; Judge Zagel merely reasoned that once the court rules on admissibility the parties are obliged to comply with the ruling. *Boyd*, 55 F.3d at 244; *Griffin*, 867 F.Supp. at 1347, n. 1.

After hearing the arguments and evidence elicited during the evidentiary hearing, the court finds that these five categories of evidence are relevant only as to credibility and reliability and therefore are admissible for that purpose.

### 1. Adherence to F.B.I. guidelines

 As a matter of law, government adherence or lack thereof to FBI internal guidelines is no basis for acquittal, *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979), but is admissible to challenge credibility or reliability of the evidence. *United States v. Feekes*, 879 F.2d 1562, 1564–65 (7th Cir.1989). During the evidentiary hearing, the court heard evidence that the FBI had reason to suspect that Whitacre might be unsuitable to gather evi-

dence and failed to comply with established recording policies. Despite the government's assertions to the contrary, this evidence is relevant as to how much credence the jury should give the Whitacre tapes and to the government's witnesses who contend that the tapes are authentic.

The government contends that the FBI guidelines are somehow exempt from scrutiny because it is often compelled to rely on aid from criminal informants who cannot be watched at all times of the investigation. An informant's value as an investigatory tool stems from his ability to gain access to criminal confederates, usually by virtue of his own criminal past. Thus, the manner in which informants are used is relevant to determine the reliability of their evidence which is always relevant for cross examination. *Feekes*, 879 F.2d 1562, 1564 (7th Cir.1989).

Indeed, the government, at the evidentiary hearing, argued that this type of evidence should be submitted to the jury. The FBI "suitability" and "taping" guidelines are relevant because they show how far the investigation deviated from procedures which are intended to insure the integrity of evidence which is always relevant. Thus, they will be received for the limited purpose of challenging the credibility, reliability, and the authenticity of the conversations that the government purports the tapes contain.

## 2. *Government Motive and Subjective Intent*

Here, the defendants seek to introduce evidence regarding the defendants' theory that the government and Whitacre conspired to "frame" the defendants by fabricating, destroying, and selectively taping conversations to implicate the defendants in the alleged conspiracy.

■ Based on the evidence adduced at the hearing, the court finds that the defendants have made an adequate showing that there might have been some ulterior motive by some government agents which bears on the accuracy of the evidence being used in the prosecution. Allegedly, Whitacre sought to convict Michael Andreas to get rid of him so that Whitacre could become the next president of the Archer Daniels Midland Company; other government agents allegedly want-

ed to advance their careers with a major conviction like the alleged lysine conspiracy. Motive, bias, and prejudice are the oldest reasons to shade testimony and are admissible to challenge a witness' credibility. *See* Fed.R.Evid 607; *see e.g., United States v. Abel,* 469 U.S. 45, 52, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984); *United States v. Lindemann,* 85 F.3d 1232 (7th Cir.1996).

■ However, the subjective beliefs of Whitacre and other government agents are inadmissible as to any potential entrapment defense which the defendants might attempt to raise at trial. As a matter of law, the government's intent to entrap the defendants is irrelevant to prove entrapment. *United States v. Shields,* 1991 WL 236492 (N.D.Ill. Aug., 13 1991) (Rovner, J.) *citing United States v. Robinson,* 763 F.2d 778, 782–83 (6th Cir.1985). Likewise, this evidence is admissible for the limited purpose of challenging the credibility, reliability and authenticity of the government's tapes.

The remaining evidence or argument regarding: conversations between government agents; failure to undertake certain investigative steps during the course of the investigation; and the government's knowledge that Whitacre was unreliable, based on references to polygraph evidence and consultations between the investigating agents assigned to the F.B.I.'s Behavioral Science Unit (BSU), is admissible since they are all probative of the credibility of the tapes as previously held in the April 16 order and need not be rehashed.

Accordingly, any and all argument or evidence stemming from alleged selective taping and destruction of evidence, including failure to supervise Whitacre in compliance with FBI internal guidelines, and the conversations between defendants are admissible for the limited purpose of challenging the credibility, reliability, and authenticity of the tapes. As previously stated in the court's May 7, 1998 minute order, the court will permit the defendants access to internal BSU documents if the court finds them to be necessary for cross-examination. Defendants Andreas, Wilson, and Whitacre are warned that any attempts to implicitly or

explicitly raise an outrageous conduct defense will result in sanctions.

### B. *Motion Regarding Presentation of Tape Recordings*

This motion involves the method in which the government proposes to present the audio and videotapes into evidence. First, substantively, the government proposes playing only particular portions of the tapes which it believes to be relevant. Second, procedurally, the government, claiming it wishes to assist the jury to better understand the taped evidence, seeks to: (1) edit the audiotapes to eliminate extraneous background noise; (2) to caption the videotapes with corresponding transcripts so that the jury will not be forced to simultaneously read the transcript while watching the video, and; (3) to project transcripts of the audiotapes onto a video screen while playing the audiotapes so that the jury can better understand the audiotapes.

The defendants object to permitting the government to play selected portions of the audiotapes to the extent that they would be prohibited from counter designating relevant additional portions of the tapes which explain or otherwise place the evidence into context.

### 1. *Substantive Claim*

Under Federal Rule of Evidence 106, the defendants have the right to introduce any other relevant portions of the recorded statement which the government seeks to admit into evidence. *See* Fed.R.Evid. 106. To lay the foundation for their completeness claim, the defendants need only specify the portion of the relevant testimony which qualifies or explains the portions which the government introduces. *See United States v. Sweiss*, 814 F.2d 1208, 1212 (7th Cir.1987).

The government concedes that, to the extent required by Rule 106, it must and will play complete selections of the taped conversations during its case-in-chief, but that any portions which the court deems irrelevant as to the government's tapes, must be presented during the defendants' rebuttal. *See e.g., United States v. Shields*, 783 F.Supp. 1094, 1096 (N.D.Ill.1991) (Rovner, J.) (holding that only relevant portions to the government's recorded evidence must be played during its case-in-chief). Accordingly, the parties shall confer and designate in writing the particular portions necessary to comply with the completeness doctrine.

### 2. *Procedural Claim*

With respect to the presentation of the evidence, the defendants do not object to the enhancing of the tapes. However, they assert that they must be provided with copies of the enhanced and unenhanced versions of the recordings along with an expert's certification that the enhanced versions accurately reflect the original copies. The defendants shall be provided with both versions, but expert certification is unnecessary since testimony from the government's tape expert is sufficient to establish authenticity.

### C. *Motion to Exclude Evidence of Reasonableness, Justification or Lack of Intent*

The government moves to exclude all argument and all evidence concerning: (1) any lack of effect of the alleged conspiracy, including the reasonableness of lysine prices during the time period of the alleged conspiracy, and; (2) Andreas' and Wilson's lack of intent to participate in the alleged conspiracy or to cause anti-competitive effects.

The government asserts that all evidence regarding lack of intent to violate the law or the alleged conspiracy's actual effect on interstate commerce is inadmissible since it is irrelevant and will mislead or confuse the jury. The government speculates that the defendants will attempt to introduce complicated economic evidence to show that the alleged lysine conspiracy, i.e., prices, volume, etc., was reasonable or economically justified.

The defendants assert that the evidence of the alleged conspiracy's effect on commerce and their alleged participation therein is admissible circumstantial evidence from which the jury can determine whether the defendants, in fact, had specific intent to agree to conspire, and not to argue that their alleged misconduct was reasonable.

Price-fixing is a *per se* violation of the Sherman Act which imposes criminal liability if the defendants had specific intent to agree to conspire regardless of the conspiracy's actual effect on commerce or

whether the defendants took additional steps in furtherance of the conspiracy. *United States v. Azzarelli Const. Co.*, 612 F.2d 292 (7th Cir.1979), *citing United States v. Socony–Vacuum Oil Co.*, 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 473 (10th Cir.1990). The indictment clearly accuses the defendants of agreeing to the worldwide lysine price-fixing. Assuming the government can produce evidence at trial which proves that the defendants knowingly agreed to participate in the conspiracy, evidence of the actual restraint on the lysine trade is completely irrelevant to defendants' specific intent.

Accordingly, the court shall take this motion under advisement and reserves ruling until the government presents its evidence of specific intent at trial.

### D. Motion to preclude evidence and argument regarding penalties

 The government moves to preclude Andreas, Wilson, and Whitacre from *inter alia* making reference to the potential penalties they face if convicted. The defendants do not contest the motion. As a matter of law, potential penalties are irrelevant as to guilt and thus are inadmissible. *Shannon v. United States*, 512 U.S. 573, 579, 114 S.Ct. 2419, 129 L.Ed.2d 459 (1994), *citing, Rogers v. United States*, 422 U.S. 35, 40, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975); *see also United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997). Accordingly, the motion is granted.

### E. Motion to preclude argument or evidence to elicit jury nullification

The government seeks to preclude argument and evidence which it contends will elicit jury nullification, including references: (1) that the defendants work for a large corporation which employs thousands of Americans; (2) that ADM's entry into the lysine market initially caused a six-month reduction in the market price; (3) regarding the defendants' or ADM's "moral or ethical behavior"; (4) regarding alleged investigatorial or prosecutorial misconduct by the government, i.e., FBI or the Department of Justice, and; (5) regarding the effect a conviction would have on the defendants' families. In response, the defendants contest

only the admissibility of evidence regarding governmental misconduct and ADM's competitive activity in the lysine market.

 As a matter of law, the defendants are prohibited from raising a jury nullification argument to the jury. *United States v. Kerley*, 838 F.2d 932, 938 (7th Cir. 1988). Impassioned pleas expounding upon the defendants' virtues as employers and how potential convictions would affect their families are irrelevant in determining their guilt or innocence and the court will not permit them to raise such arguments.

To the extent that the government seeks to exclude evidence of the defendants' competitive acts, the court has previously held that economic evidence related to the lysine industry is irrelevant since the Sherman Act imposes liability based solely on the agreement. Thus, evidence of subsequent economic activity is irrelevant.

Likewise, the court's April 16, 1998 order held that all references to the alleged investigatory misconduct are admissible for the limited purpose of determining the credibility of the audio and videotape surveillance that the government seeks to introduce at trial. Accordingly, the motion is granted.

### F. Motion to exclude references of defense counsel's prior prosecutorial experience

 The government moves to exclude defense counsel from referring to their prior prosecutorial experience, before the jury. The defendants do not contest the motion, but argue that, if granted, the motion should apply to both sides. Such statements are irrelevant and likely to prejudice the defendants. *See United States v. Messino*, 873 F.Supp. 1177, 1182 (N.D.Ill.1995). Accordingly, the motion is granted and all counsel are ordered to refrain from mentioning their prior prosecutorial experience.

### G. Motion to exclude argument and inquiry based on race or national origin

 The government seeks to exclude evidence or argument regarding race and national origin. The court neither anticipates nor will tolerate any attempts to put race or

national origin at issue in this case. Race and national origin are inherently suspect topics, *Adarand Constructors, Inc. v. Pena,* 515 U.S. 200, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995) (addressing race); *Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) (discussing national origin), and *per se* remarks regarding these topics serve no relevant purpose in this or any other criminal trial. *See Smith v. Farley,* 59 F.3d 659 (7th Cir.1995).

The defendants contest this motion *in limine* to the extent that it may preclude them from introducing evidence regarding international lysine competition. There is a drastic difference between appealing to ethnic animosities and acknowledging a competitor's national origin or race when they are used to merely identify the locations or individuals involved in this action.

The defendants will be permitted to fully explore what, if any, interaction the international lysine producers had with each other since it relates to the weight of the evidence produced at trial. However, the court will not tolerate any implicit or explicit attempts to interject impermissible references to race or national origin during the trial. Accordingly, the governments motion *in limine* is granted and will be strictly enforced in a manner consistent with this court's ruling.

### H. *Government's immunization decisions*

The government seeks to preclude the defendants from presenting evidence or arguments questioning the government's decision to immunize certain co-conspirators in this case. The defendants, in response, claim that they are entitled to impeach the credibility of the immunized co-conspirators by eliciting information relevant to bias and credibility.

■■■■■ Immunity decisions are completely within the government's discretion. *United States v. Hooks,* 848 F.2d 785, 799 (7th Cir.1988), but that discretion is tempered by the defendants' right to impeach the credibility of immunized witnesses guaranteed by the Sixth Amendment's Confrontation Clause. Suspects who acquire immunity, despite presumed prosecutorial admonishment to testify truthfully, may falsely believe that shading their testimony to ensure a conviction may improve their own well-being. *See generally United States v. Clark,* 989 F.2d 1490 (7th Cir. 1993). Unlike motive and bias, the Confrontation Clause does not give the defendants carte blanche to question the reasonableness or fairness of the prosecutor's immunity decisions; such decisions are completely within the authority vested by Congress and are not subject to second-guessing by the court or a jury. *Hooks,* 848 F.2d at 798. Accordingly, the motion is granted and the defendants are precluded from implicitly or explicitly questioning the government's immunity decisions.

### I. *Motion to exclude references to prior lawful and non-corrupt conduct*

The government moves to exclude all evidence and argument related to the defendants' prior lawfulness and/or non-corrupt conduct, except opinion or reputation evidence pursuant to Federal Rule of Evidence 405(a), including testimony that: (1) the defendants are *inter alia* law abiding "good guys"; (2) co-workers, during the investigation, stated that they were unaware of the defendants alleged crime; (3) the defendants' "prior business activity" complied with the law or that they made no prior attempts to fix prices in other markets.

The defendants concede that Rule 405 governs the use of opinion and reputation evidence, but dispute whether it precludes them from presenting such evidence to disprove the existence of the alleged conspiracy. In *United States v. Burke,* 781 F.2d 1234, 1243 (7th Cir.1985), the Seventh Circuit emphatically held that "evidence that the defendant frequently performs lawful or laudable acts do not often establish that some subsequent act is also lawful or laudable." Rather than speculate as to the use of such character testimony, the court shall take this motion under advisement until it hears the context in which the questions are put to the witnesses.

### J. *Government's Motion for Discovery*

The government moves for discovery pursuant to Federal Rule of Criminal Procedure 16. The defendants contend that approximately 98 to 100 percent of the evidence it intends to produce at trial comes directly

854

from the government, ADM, or ADM's competitors, but that they are still in the process of determining which specific forms of evidence it will use at trial. The defendants have had adequate time to review the government's evidence and prepare a defense strategy. Thus, the government's motion is granted. The defendants are ordered to make a good faith effort to immediately begin producing documents and information which they intend to introduce at trial.

### K. *Entrapment*

The government moves *in limine* to preclude the defendants from raising an entrapment defense, arguing that there is no evidence that the defendants lacked predispositions nor were induced by the government to commit the alleged conspiracy.

■■■ To raise an entrapment defense, the defendants bear the burden of showing that: (1) the government induced them to commit the crime, and; (2) they lacked predisposition to engage in the alleged crime. *Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988); *United States v. Santiago–Godinez*, 12 F.3d 722, 727–728 (7th Cir. 1993). In short, the defendants must show that but for the government's extraordinary inducement, they lacked the predisposition to commit and would not have committed the crime. *United States v. Evans*, 924 F.2d 714, 717 (7th Cir.1991).

■■■ The availability of an entrapment defense is rarely amenable to a pre-trial ruling since the defendants' intent and predisposition are factual issues to be resolved by a jury. *United States v. Johnson*, 32 F.3d 304, 307 (7th Cir.1994). Motions to preclude an entrapment defense can be considered only when it is clear that the evidence to be offered by the defendant can, under no interpretation, support the defense. *Johnson*, 32 F.3d at 307.

■■■ The court is convinced this motion *in limine* is premature. The context and circumstances of the meetings between the defendants and their business competitors are heavily disputed. Indeed, the record reflects that Whitacre was repeatedly admonished by his supervising agents not to induce the defendants to engage in criminal acts which suggest that there may have been potential entrapment problems. Rather than prematurely speculate as to whether the defendants have a viable entrapment claim, the court will reserve ruling until trial.

### L. *Motion to Exclude Argument or Questioning Regarding Alleged Selective Prosecution*

■■■ The government seeks to preclude the defendants from raising its selective prosecution claims at trial. To make a *prima facie* case for selective prosecution, the defendants must establish that they were singled out for prosecution while others similarly situated were not prosecuted and that the alleged selective decision to prosecute was based on impermissible grounds of discrimination or for exercising a constitutionally protected right. *See Jarrett v. United States*, 822 F.2d 1438, 1443 (7th Cir.1987).

■■■ The defendants do not claim that this prosecution was motivated by impermissible discrimination or in retaliation for exercising a constitutionally protected right. Instead, they assert that the government's decision to cut immunity deals with other alleged co-conspirators constitutes selective prosecution. Well, it does, but not impermissible selective prosecution. Indeed, decisions whether or not to prosecute are completely within the prosecutor's discretion if supported by probable cause. *See Wayte v. United States*, 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985). The government's *Santiago* proffer shows that it has probable cause to prosecute the defendants. Accordingly, the motion is granted. The defendants shall not make any implicit or explicit argument regarding selective prosecution.

### *CONCLUSION*

For the reasons set forth above:

1. Andreas' Motion to Exclude Inauthentic Audiotapes is **DENIED.**

2. Andreas' Motion to Exclude from Evidence Any Video or Audiotapes of the October 25, 1993 Irvine, California Meeting is **DENIED.**

3. Andreas' Motion to Exclude Tapes Created by Mark Whitacre for Violation of the Sixth Amendment Confrontation Clause is **DENIED.**

4. Andreas' Motion to Exclude Mark Whitacre's Statements Made to the Government pursuant to the *Bruton* Doctrine is **DENIED.**

5. Andreas' Motion to Exclude 404(b) Evidence is **DENIED.**

6. Andreas' Motion to Sever from Wilson is **DENIED.**

7. Defendants' Motion to Sever from Mark Whitacre is **DENIED.**

8. Defendants' Motion to Exclude Evidence of or Reference to the Guilty Pleas of Alleged Co–Conspirators or to Related Civil Litigation is **DENIED.**

9. Government's Motion to Exclude Argument or Evidence of Government Misconduct During the Course of the Investigation is **DENIED.**

10. Government's Motion Regarding Presentation of Tape Recordings is **TAKEN UNDER ADVISEMENT.** The parties are directed to meet and resolve this matter in a manner consistent with the ruling set forth in this order.

11. Government's Motion to Exclude Evidence of Reasonableness, Justification, or Lack of Intent is **TAKEN UNDER ADVISEMENT.**

12. Government's Motion to Exclude Evidence and Argument Regarding Penalties is **GRANTED.**

13. Government's Motion to Exclude Argument or Evidence to Elicit Jury Nullification is **GRANTED.**

14. Government's Motion to Exclude References of Defense Counsel' Prior Prosecutorial Experience is **GRANTED** and shall apply equally to the government.

15. Government's Motion to Exclude Argument and Inquiry on Race and National Origin is **GRANTED.**

16. Government's Motion to Exclude Evidence or Argument Questioning the Government's Decision to Immunize Co–Conspirators is **GRANTED.**

17. Government's Motion to Exclude References to Prior Lawful and Non–Corrupt Conduct is **TAKEN UNDER ADVISEMENT** until the court hears the context in which the issues are raised at trial.

18. Government's Motion for Discovery is **GRANTED.** The defendants shall make a good faith effort to immediately begin to produce documents and information which they intend to introduce at trial.

19. Government's Motion to Preclude the Defendants from Raising an Entrapment Defense is **TAKEN UNDER ADVISEMENT** until the court evaluates the evidence in the context of trial to determine if such a defense is available.

20. Government's Motion to Exclude Argument or Questioning Regarding Alleged Selective Prosecution is **GRANTED.**