**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Dennis LOVELACE, Defendant–Appellant.**

No. 96–3689.

United States Court of Appeals, Seventh Circuit.

Argued May 28, 1997.

Decided Aug. 22, 1997.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 6, 1997.

---

Christian R. Larsen (argued), Rodney Cubbie, Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Robert J. Dvorak, Milwaukee, WI, Dean A. Strang (argued), Fitzgerald & Strang, Milwaukee, WI, for Defendant–Appellant.

Before CUDAHY, ESCHBACH, and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Dennis Lovelace was convicted by a jury of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a). Caught red-handed in Milwaukee with a trunk full of cocaine and drug paraphernalia, Lovelace, the driver of the car, and another passenger

were arrested. At trial, the government introduced into evidence and repeated four times an informant's tip that had led to Lovelace's arrest. The substance of the tip was that Lovelace was to be in Milwaukee at a certain address on a certain day with cocaine for sale. Because this tip fingered Lovelace, as opposed to his passenger, who was never prosecuted, Lovelace argues on appeal that the admission of this tip unfairly prejudiced his trial. In addition, Lovelace argues that the government's closing argument, which contained a scornful remark or two about trial process, deprived him of a fair trial. We affirm.

## I.

Milwaukee police received a tip that Dennis Lovelace would be on the 2600 block of West North Avenue in a rental car for the purpose of delivering cocaine. Acting on this tip, Milwaukee Police Detective Baker and Special Agent Gibson hunted for Lovelace on West North Avenue. Not finding him, they traveled to a part of the city where Lovelace was known to frequent, and then to Lovelace's girlfriend' s house. Still empty-handed, they returned to West North Avenue, where they spotted a dark green Bonneville. Gibson and Baker ran a check on the Bonneville's plates and discovered that they were listed as belonging to an Oldsmobile Cutlass owned by Avis Rent-a-Car.[1] Diverted by another suspicious car, the detectives left West North Avenue, only to cross the Bonneville's path again, at which time they pulled it over.

The officers requested identification and rental papers from the Bonneville's occupants: driver Lovelace and his passenger Shabazz. Detective Baker then asked permission to search the trunk, which Lovelace freely granted. In the trunk Baker found a tripartite duffel bag, the center compartment of which contained a brick of cocaine, 34 ziplock plastic bags, and an electronic scale. From one end compartment, the police recovered more cocaine. From the other end compartment, the police found a travel itinerary and a boarding pass bearing Lovelace's name. Also in the trunk were dry cleaning

with tags marked with Lovelace's mother's address and a hotel receipt belonging to Shabazz. From Lovelace's person, police recovered three pagers and $1,050 in small bills; from Shabazz, police recovered one pager.

At trial, the government's theory was that of constructive possession: Lovelace was the driver of the car that contained a trunk full of cocaine; on his person was a large quantity of cash and three pagers, indicia of a drug dealer; and in the duffel bag with the cocaine, scale and small plastic bags, were travel documents bearing Lovelace's name. The gist of Lovelace's defense was insufficiency of the evidence. His counsel vaguely theorized that the rental car could be likened to a "community car", he pointed out that there was no evidence the pagers worked, that there were no weapons in the car, and that there was no proof clothing in the car belonged to Lovelace. With respect to the tip, the government first outlined its bare allegations in opening argument; both Detectives Starr and Baker testified to its content; and the government repeated its substance in closing argument. The jury convicted Lovelace, and the court sentenced him to 87 months of imprisonment, four years of supervised release, and a $2,000 fine.

## II.

Lovelace argues that the admission of the tip was an abuse of the trial judge's discretion. Tips that inform law enforcement of criminal activity may be offered into evidence for the purpose of explaining actions undertaken pursuant to a criminal investigation; their function, courts reason, is to give context, rather than to prove criminal activity. See United States v. Reyes, 18 F.3d 65, 70 (2d Cir.1994); United States v. Mancillas, 580 F.2d 1301, 1309 (7th Cir.1978); cf. United States v. Godinez, 110 F.3d 448, 456 (7th Cir.1997). Such a facially benign purpose, however, does not guarantee admittance: we inquire as to the tip's relevance and as to its prejudicial effect. See Reyes, 18 F.3d at 70. In making this calculus, courts, who must weigh the need to provide context against the prejudicial effect of admitting an

1. The plate registration error was later deemed to be Avis's fault.

out-of-court statement that testifies to the likelihood of a criminal act, have been justifiably wary. *See United States v. Martin*, 897 F.2d 1368, 1372 (6th Cir.1990). We explained in Mancillas, our circuit's foremost case on the issue, "To allow testimonial repetition of a declarant's out-of-court charge that the defendant would engage or was engaged in specific criminality would seem to create too great a risk that these dangers [of prejudicial impact] will actualize. That risk cannot be justified simply to set forth the background of the investigation." 580 F.2d at 1310.

Tips have been considered relevant in a criminal trial where they contribute to an understanding of the defendant's state of mind or when used in response to a defense tactic. *See United States v. Forrester*, 60 F.3d 52, 60–61 (2d Cir.1995); Reyes, 18 F.3d at 70. In Lovelace's case, the government argues that because two white officers pulled over two black men, in the absence of a tip, the jury would suspect racial bias. The tip was relevant, therefore, to show that the investigation was conducted in an impartial manner. Race or racial bias, however, was not an issue in this case. Defense counsel, when arguing his motion in limine, denied any intent to make race a point of contention in this case and, from our review of the trial record, race never gained any currency. Thus, the admission of the tip was not necessary to correct any impression of bias created by the defense. In the absence of an indication of impropriety, any relevancy to the tip, in that it could counteract a latent unease in the jury suggested by the racial composition at the arresting situation, is marginal, at best.

The lack of a compelling reason to admit the tip was compounded by its potential for prejudice. Federal Rule of Evidence 403 provides that relevant evidence may be excluded where its "probative value is substantially outweighed by the danger of unfair prejudice." The worry with a tip containing a specific charge of criminality is that it has great potential to be credited by the jury. Such a tip can be particularly prejudicial

where it addresses a disputed issue or is made by a knowledgeable declarant (and therefore presumably believed by the jury). *See Reyes*, 18 F.3d at 70–71. Less prejudicial are tips that are corroborated by uncontested evidence or tips whose declarants are available for cross-examination. *Id.*

Here the admission of the tip sounds several alarms. Most significant among them is that this tip goes to the heart of the only colorable dispute at trial: whether Lovelace was the right man. In this constructive possession case, Lovelace argued insufficiency of the evidence. One logical conclusion to draw from the defense that there just was not enough information to connect the drugs to Lovelace is that the drugs belonged to Shabazz or another member of the car's "community." In this light, the tip, which tied the drugs to Lovelace alone, could be thought by the jury to offset the defense's explanation and thus could be prejudicial to Lovelace's defense. *Cf. United States v. Martinez*, 939 F.2d 412, 414 (7th Cir.1991) (admission of tip with vague reference to "man" who offered to sell cocaine in instance of multi-male conspiracy held non-prejudicial). Moreover, the tip's declarant was a confidential informer, unavailable for cross-examination. (By the same token, however, the jury would not know the extent or source of the declarant's knowledge, and therefore might not have allotted the tip great weight.) Finally, the substance of the tip was repeated four times at trial, possibly exacerbating any damage done.

■ A chameleon-like factor reviewing courts look to in assessing potential prejudice is the existence of a curative instruction. Potentially determinative, it is the court's direction that distinguishes a tip from hearsay for the jury. *See Reyes*, 18 F.3d at 71; *United States v. Rodriguez*, 524 F.2d 485, 487 (5th Cir.1975); *see also United States v. Neely*, 980 F.2d 1074, 1087 (7th Cir.1992) (courts presume instructions are taken seriously). In *Mancillas* there was no limiting instruction. 580 F.2d at 1310. Here, an instruction accompanied each admission,[2] if

---

2. At the first instance of the tip's admission, the court read the following instruction:

The court has allowed the witness to testify as to the fact that they received this tip and what

not the references to the tip in the opening and closing arguments, and we must consider whether these words from the court were a sufficient remedy. We do not examine the content of the limiting instruction in isolation, but rather in relation to the substance of the tip and the context of the trial. *See Reyes,* 18 F.3d at 72 (determinative significance of tip, its lack of significance for any other purpose, and whether instruction explained mental difficulty of considering information for one purpose, but not for another all part of calculus); Rodriguez, 524 F.2d at 487 (curative instruction insufficient given nature of testimony, recounting details of informant's tip). A jury is unlikely to follow an instruction given where the admission of the tip adds little to the context of the investigation or where the substance of the tip is overwhelmingly incriminating. Here, as explained above, the tip was of marginal value in setting the context for the investigation. Rather, it testified to the ultimate conclusion meant to be reserved for the jury in this criminal trial. Moreover, twice in argument, the government was able to repeat the tip with no check from the bench. Given the repetition, the substance, and the context, while the limiting instruction itself was not erroneous, we cannot conclude with certainty that the curative instruction was likely to be followed.

■ In our judgment, the tip should not have been admitted. It was, and our task is to determine whether it affected the outcome of Lovelace's trial. *See United States v. Zapata,* 871 F.2d 616, 622 (7th Cir.1989). The tip said Lovelace was going to be in Milwaukee at a certain address on a certain day with cocaine for sale. At trial, evidence was presented to show that police apprehended Lovelace in Milwaukee, on that day, with a substantial quantity of cocaine and the

means to divide it up in the trunk of his rental car. Lovelace was more closely linked to the cocaine because travel documents bearing his name were found in the same bag as the drugs. In his defense, Lovelace presented an incredible theory accompanied by no evidence. The full corroboration of the substance of the tip by independent evidence precludes the reasonable probability of its impact upon the verdict, and we therefore hold this trial error harmless. *See Mancillas,* 580 F.2d at 1310.

### III.

■ In the government's closing argument, the prosecutor addressed the following words to the jury:

> Trials are an amazing process. If you were any place but in this courtroom, if you were outside in your everyday life and someone walked up to you and said, hey, this is what happened on March 29, 1996, and they relayed these facts to you, you'd go, wow, that guy is guilty. It is only in a courtroom where we sit and listen to arguments such as the arguments that have been made on behalf of Mr. Lovelace which are simply blind alleys, ladies and gentleman, and have to give those things serious consideration. The law requires that.

■ At this point in the trial, Lovelace objected and moved for a mistrial, which was denied. Lovelace maintains that this portion of the government's closing argument is an instance of prosecutorial misconduct because the remarks "pander to latent cynicism" and "call into question the fact finding process." The government counters that these remarks were simply the prosecution's way of inviting the jury to ignore factually unsubstantiated arguments made by the defendant. We use

they did pursuant to the receipt of that tip. Now, that's not offered for the truth of the allegations in the tip; that's offered to explain only the actions of the officers. In other words the declarant here is testifying to what somebody else told somebody in the department, and that's of course hearsay. There's no way of cross-examining the tip, so the court allows it only for the purpose of explaining to you what the officers did or why they did what they did; it's not offered for the truth of the matter

that's asserted in the tip. And I want you to make that distinction because you may not base your verdict upon the tip or the information that was relayed to the police department in that tip.

At the second admission, the court simply said, "As I previously advised the jury, the information that was received by this officer and which was passed on is not offered for the truth of the information but merely to explain the actions that were taken by the police officer."

the same standard of review as we did above and assess whether the trial judge by allowing the prosecution's remarks abused his discretion. *See United States v. Marshall,* 75 F.3d 1097, 1107 (7th Cir.1996). To evaluate such a claim, we first examine the remarks in isolation. If we consider the remarks improper, we examine them in light of the whole trial and assess whether the defendant was deprived of a fair trial. *Id.* (quoting *United States v. Butler,* 71 F.3d 243, 254 (7th Cir.1995)).

The defense has some reason to complain. Because one may read into "amazing" a tone of disrespect for our practices and procedures, these remarks do not add to the stature of the profession or of the courts. It would behoove the government to avoid such insinuations in the future and find a better way to impart to the jury that it use common sense. We cannot, however, go so far as to say that these remarks are facially improper. Through his sarcasm (or in spite of his sarcasm), the prosecution does remind the jury of its duty to deliberate within the parameters of the law. Because his argument in no way sought to displace the burden of proof under which Lovelace was convicted, we need not proceed with a consideration of the whole trial record.

For the foregoing reasons, we AFFIRM the judgment of the district court.