**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jimale L. WILLIAMS, Defendant–
Appellant.**

**No. 97–2576.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 9, 1997.

Decided Jan. 16, 1998.

Thomas P. Schneider, Carol L. Kraft (argued), Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Edward John Hunt (argued), Milwaukee, WI, for Defendant–Appellant.

Before POSNER, Chief Judge, and BAUER and COFFEY, Circuit Judges.

BAUER, Circuit Judge.

Jimale Williams was convicted of bank robbery by force, violence, and intimidation in violation of 18 U.S.C. §§ 2113(a) and 2. On appeal, Williams argues that: (1) the trial court erred in denying his motion to suppress evidence; (2) the evidence of guilt and the identifications were insufficient to convict beyond a reasonable doubt; (3) the trial court erred in failing to give a cautionary instruction when reading back testimony to the jury during deliberations; and (4) the trial court erred in admitting a hearsay statement by a confidential FBI informant that the defendant was a suspect. For the reasons set forth below, we·reverse.

## Background

On November 29, 1996, two armed men robbed a branch of the Lincoln State Bank located at the Friendship Village Retirement Center in Milwaukee, Wisconsin. Two bank tellers, Debra Jeske and Ralph Ramczykowski, were working at the time when the men entered the bank and announced a robbery. According to Ms. Jeske, one of the robbers was wearing a knit cap and carried a shot-

gun, and the other robber wore a mask covering his face and carried a handgun.

After the robbery was completed, Ms. Jeske called the police. When they arrived, she gave a description of both robbers to the police. A few days after the robbery, FBI Special Agent Michael Johnson received information from a confidential FBI informant that two people may have committed the robbery, and the informant identified the potential suspects as the defendant Jimale Williams and James Veasley. Special Agent Johnson conveyed this information to Milwaukee Police Detective Ralph Spano who composed a photo spread, containing the pictures of Williams and Veasley, to show to the witnesses in a photo identification.

On December 3, 1996, Jeske was shown an array of eight photographs. She picked out Williams' picture, but admitted that she was not absolutely positive and wanted to see him in person. Jeske indicated to the police that she would be able to identify him in a lineup. Based upon this tentative identification, the police believed they had probable cause to arrest the defendant. Thereafter, the police arrested Williams at his home and retrieved a coat similar to the one Jeske had described as the coat worn by one of the robbers. After he was arrested, Williams was interviewed by Special Agent Johnson and Milwaukee Police Detectives Steven Fyfe and Shanon Koerner. The police detectives told Williams that he had been positively identified by the bank tellers as one of the robbers. However, during the interview, Williams denied any participation in the bank robbery.

On December 4, 1996, Jeske and Ramczykowski viewed a lineup. Ms. Jeske initially picked two men from the lineup, one was the defendant, and later eliminated the second man and identified Williams as one of the robbers. During her postidentification interview, Ms. Jeske stated that she was positive of her identification. Mr. Ramczykowski similarly identified Williams in the lineup, but indicated that he was not absolutely positive that Williams was the unmasked robber.

Prior to trial on January 21, 1997, Williams filed a motion to suppress evidence, including the eyewitness identifications, defendant's statement, and certain physical evidence as fruit of an illegal arrest. The district court transferred this motion to Magistrate Judge Aaron E. Goodstein to hold an evidentiary hearing. On February 21, 1997, Magistrate Judge Goodstein recommended that the district court deny Williams' motion to suppress evidence. Thereafter, the district court adopted the magistrate judge's recommendation and denied defendant's motion.

A jury trial began on March 3, 1997. At trial, Ms. Jeske testified that she was "very certain" in her identification of the defendant at the lineup. Yet, during the trial, she was unable to make an out-of-court or in-court identification of Williams, and she also was unable to identify the jacket retrieved by police as the one worn by the robber. Also at trial, Special Agent Johnson testified that he had received information from a confidential FBI informant that Jimale Williams was a suspect in the robbery. Based on this out-of-court statement by the informant, Johnson identified Williams by name as a suspect during his testimony. Special Agent Johnson further testified that during an interrogation, Williams denied committing the offense, yet he also was permitted to testify about Williams' demeanor and reactions when he was confronted with the fact that he had been identified as a suspect. There was some additional testimony presented by the government about the relationship between Williams and Darryl Killebrew, who was the boyfriend of the defendant's mother, Sandra Williams. This testimony involved some speculation as to how Williams potentially could have obtained information about the bank to prepare for the robbery.

Jimale Williams presented an alibi defense, and his uncle, Prentice Williams, testified at trial that Williams was at home at the time the robbery occurred. Marvella Rose also testified that she picked up Williams at his home around the time of the robbery and drove him to a shopping center. At the conclusion of the trial, Williams moved for acquittal on grounds of insufficiency of the evidence, which was denied by the district court. On March 6, 1997, the jury found the defendant guilty of bank robbery. After the jury announced the verdict, the defendant moved for judgment of acquittal notwith-

standing the verdict, which the district court also denied. Thereafter, on June 12, 1997, the district court sentenced Williams to serve 84 months in prison, to be followed by three years of supervised release. Williams now appeals his conviction.

On appeal, Williams argues that the trial court erred in denying his motion to suppress evidence and that the identifications were insufficient to convict him by proof beyond a reasonable doubt. Williams also claims that the trial court's failure to give cautionary instructions when reading back testimony to the jury was error. Finally, he argues that the trial court erred in admitting a portion of the testimony of Special Agent Johnson who testified about an out-of-court statement made by a confidential informant. With these facts in mind, we now turn to the issues presented for review.

## Analysis

■ On review, we apply an abuse of discretion standard to evidence admitted over an objection; however, we review the admissibility of evidence to which an objection was not made for plain error. *United States v. Akinrinade*, 61 F.3d 1279, 1283 (7th Cir.1995). At trial, defense counsel objected to the admission of Special Agent Johnson's testimony as hearsay and a violation of the defendant's Sixth Amendment right under the confrontation clause. As such, these issues are reviewed under an abuse of discretion standard. On appeal, however, counsel asserts that the admission of the testimony also violated Federal Rule of Evidence 403. Because counsel did not specifically raise this objection at trial, this issue is therefore reviewed for plain error. *Akinrinade*, 61 F.3d at 1288; *see also United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993) (defining plain error as an error that is clear under current law, affects substantial rights, and prejudicially influences the outcome of the trial).

Williams argues that the trial court erred by admitting Special Agent Johnson's testimony about the out-of-court statement made by the confidential FBI informant and the informant's identification of Williams as a suspect. Defense counsel asserts that the testimony is hearsay offered to prove the truth of the matter asserted. The government, however, argues that the agent's testimony was not offered to prove the truth of the matter asserted, but rather to establish the course of the police investigation. The government asserts that the agent's testimony relating to his conversation with the informant was properly admitted to explain the investigatory procedures and development of the photo spread for the photo identification.

■ Federal Rule of Evidence 801 defines hearsay as an out-of-court statement offered in evidence to prove the truth of the matter asserted. We exclude out-of-court statements as hearsay for several reasons. First, the declarant, that is the person who made the statement, rather than the intermediary who relates it, was not under oath when he made the statement. Second, the declarant is not present at trial, and his absence deprives the trier-of-fact of the opportunity to assess the declarant's demeanor and credibility. *United States v. Verrusio*, 803 F.2d 885, 893–94 (7th Cir.1986) (citation omitted). Third, the declarant is not subject to cross-examination. *United States v. Lovelace*, 123 F.3d 650, 653 (7th Cir.1997). Indeed, in criminal cases, the denial of the defendant's right to challenge the declarant's statements in cross-examination implicates constitutional concerns. *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

We agree with Williams that Special Agent Johnson's testimony is inadmissible hearsay. The government's argument that his testimony provides the context for the police investigation and composition of the photo spread for the identification is misplaced. There is absolutely no reason for Special Agent Johnson to testify about the substance of his conversation with the confidential informant and to explicitly identify Williams in court for the government to explain the actions taken by the police in their investigation. Context and background can be established, and are properly established, without the admission of the confidential informant's hearsay declaration.

■ On appeal, Williams raises another evidentiary rule to challenge Special Agent Johnson's testimony. Federal Rule of Evidence 403 provides that evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or if it would mislead the jury. As we recently recognized in *United States v. Lovelace,* hearsay testimony about an informant's tip containing a specific charge of criminality can be extremely prejudicial because the jury may believe the testimony without any guarantee that it represents the truth. *Lovelace,* 123 F.3d at 654. In *United States v. Mancillas,* 580 F.2d 1301, 1309 (7th Cir.1978), we explained: "[t]o allow testimonial repetition of a declarant's out-ofcourt charge that the defendant would engage or was engaged in specific criminality would seem to create too great a risk that these dangers [of prejudicial impact] will actualize. That risk cannot be justified simply to set forth the background of the investigation." *Mancillas,* 580 F.2d at 1310.

■ In this case, the admission of the informant's statements is particularly unsettling. A police officer or government agent may reconstruct the steps taken in a criminal investigation, may testify about his contact with an informant, and may describe the events leading up to a defendant's arrest, but the officer's testimony must be limited to the fact that he spoke to an informant without disclosing the substance of that conversation. *See Lovelace,* 123 F.3d at 652; *United States v. Reyes,* 18 F.3d 65, 70 (2d Cir.1994); *United States v. Walker,* 636 F.2d 194 (8th Cir. 1980); *United States v. Campbell,* 466 F.2d 529 (9th Cir.1972). There is a clear distinction between an agent testifying about the fact that he spoke to an informant without disclosing the contents of the conversation and the agent testifying about the specific contents of the conversation—which is inadmissible hearsay.

We are concerned with the strong possibility that the jury made improper use of the evidence introduced through Special Agent Johnson's testimony, i.e., as concrete proof that Williams did indeed participate in the bank robbery. This testimony could give rise to an inference in the jurors' minds that

because a confidential FBI informant identified Williams as one of the bank robbers, then it must be true. If this evidence was at all probative, we believe that its probative value is far outweighed by the prejudice to Williams arising from its admission. We agree with Williams that Special Agent Johnson's testimony exceeded the boundaries of merely explaining the development of the police investigation. Testimony recounting the conversation between a government agent and an anonymous informant where the informant identifies the defendant and the substance of the conversation is offered into evidence constitutes inadmissible hearsay. The testimony by Agent Johnson about the conversation should not have been admitted. The district court abused its discretion and plainly erred by permitting Special Agent Johnson to testify that the confidential informant identified Williams as one of the suspects.

■ We also consider the fact that Special Agent Johnson testified about Williams' demeanor and reaction after he was informed that he had been identified by a witness as one of the robbers. At trial, Special Agent Johnson testified:

We told him that he had been positively identified by the tellers as the unmasked robber in the bank robbery. At that point he turned and began avoiding eye contact with us, kind of lowered his head, and he thought about it for a moment and then said that he didn't rob a bank.

We talked to him further about it and said that we weren't asking him whether he robbed a bank because we knew he had, but wanted to know simply why he did it. . . .

And based on my training in interviews and interrogations, I used such tactics as trying to emphasize and minimize and sympathize with him and made remarks to the effect that, you know, no one was hurt; that we all do things that we regret later, and you know, we think that if you could turn the clock back you'd probably agree that this wasn't the right thing to do and we're sure you wouldn't do it again, and you wouldn't have done it in the first place if you were able to, as I said, turn the

clock back. And while I'm making these statements he was—had his head held down and he was nodding as if in agreement with these statements.

The admission of this testimony also presents some concerns. After a government agent or police detective has just informed a person in custody that he has been identified as a suspect in a robbery and explained to him that the police have no doubt that he is the defendant, what person would not be nervous, agitated, and unwillingly to make eye contact with his interrogator? Williams denied that he participated in the robbery, yet Special Agent Johnson purports to be a human lie detector in observing Williams' demeanor. These observations are improper characterizations of the defendant and useless in the determination of innocence or guilt, and in fact, they tend to prejudice the jury. It is Williams' denial of guilt that is important and not the manner in which he communicates it.

■ Additionally, we note that the government presented some testimony attempting to connect Williams to the bank and to establish his modus operandi. From what can be gleaned from the record, it appears that the government attempted to link Williams to Killebrew because Killebrew had some prior connection to the bank where the robbery was committed. Yet, the government did not provide any solid, direct evidence, or even persuasive circumstantial evidence, and failed to establish any relationship between the two men beyond the inconsequential fact that Killebrew was dating the defendant's mother, Sandra Williams. To provide any support for and credibility to this argument, the government has to do more than abstractly discuss the possibility of a relationship between Williams and Killebrew. The least the government must do is to provide a stronger connection than the insignificant fact that Killebrew was dating the defendant's mother.

■ Finally, focusing on the district court's error in admitting improper hearsay, we must determine whether the hearsay testimony affected the outcome of Williams' trial. *See United States v. Zapata,* 871 F.2d 616, 622 (7th Cir.1989). Error is harmless unless it results in actual prejudice or " 'had

substantial and injurious effect or influence in determining the jury's verdict.' " *United States v. Beasley,* 809 F.2d 1273, 1280 (7th Cir.1987) (quoting *United States v. Lane,* 474 U.S. 438, 440, 106 S.Ct. 725, 726, 88 L.Ed.2d 814 (1986)). Special Agent Johnson testified about his conversation with the informant and identified Williams as the defendant with no corroboration offered as to the reliability or truthfulness of the informant's declaration. The identifications of Williams are weak at best, and it is obvious that the minimal evidence the government did have was bolstered by inadmissible hearsay and opinion testimony.

At the close of the government's case, in ruling on a motion to dismiss, Judge Curran commented that "the case is not certainly one of the stronger ones; in fact, some might conclude that it's paper thin." We too recognize that this case is "paper thin." The confidential informant's tip was that Williams was a suspect in the bank robbery. That fact should never have been before the jury. There was testimony about the witnesses' pre-trial identifications of Williams, yet at trial, neither witness was able to identify the defendant. All in all, we conclude that the admission of this hearsay testimony had a high probability of tainting the jury and prejudiced the outcome of the trial. Accordingly, reversal of Williams' conviction is required. Because we find that the admission of the hearsay testimony substantially influenced the outcome of the trial and reversal of Williams' conviction is required based on this error, it is unnecessary for us to address the defendant's remaining arguments.

### Conclusion

With a thin identification bolstered by a government agent's testimony about his observations and opinions of the defendant and the admission of prejudicial hearsay testimony, we are required to reverse Williams' conviction. For the reasons set forth above, we REVERSE the defendant's conviction and REMAND the case to the district court for further proceedings consistent with this opinion.