# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Theis*, 2011 IL App (2d) 091080

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN M. THEIS, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-09-1080 |
| Filed | December 20, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for predatory criminal sexual assault and aggravated criminal sexual abuse were upheld over his contentions that evidence of his videotaped interrogation was improperly admitted in evidence, that testimony and argument concerning his body language during his interrogation infringed on his right to remain silent and that the trial court erred in admitting an overwhelming amount of evidence of other alleged crimes, since the statements of the detective who conducted the videotaped interrogation, including his opinions, were not hearsay, the trial court did not err in failing to redact those statements, defendant's mischaracterization of the detective's testimony about defendant's body language precluded consideration of that issue, the prosecutor's argument, including comments about defendant's body language, did not amount to plain error, and the admission of the evidence of other crimes was not an abuse of discretion. |
| Decision Under Review | Appeal from the Circuit Court of De Kalb County, No. 05-CF-169; the Hon. Robbin J. Stuckert, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Alan D. Goldberg and Maria A. Harrigan, both of State Appellate Defender's Office, of Chicago, for appellant. |
| | Clay Campbell, State's Attorney, of Sycamore (Lawrence M. Bauer and Scott Jacobson, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion. Justices Schostok and Hudson concurred in the judgment and opinion. |

## OPINION

¶ 1    In the appeal of his predatory criminal sexual assault (720 ILCS 5/12-14.1(a)(l) (West 2004) and aggravated criminal sexual abuse (720 ILCS 5/12-16(c)(l) (West 2004) convictions regarding a two-year-old boy, S.C., defendant, John Theis, raises three issues. The first is whether the trial court improperly admitted into evidence his videotaped interrogation. The second is whether testimony and the prosecutor's argument regarding defendant's body language during his interrogation infringed on his right to remain silent. The third is whether the trial court erred by admitting an overwhelming amount of evidence of alleged other crimes. For the reasons set forth below, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3    The following facts are undisputed. In early 2005, Brandi Lewis and her two-year-old son, S.C., the victim in this case, lived at the Hope Haven homeless shelter in De Kalb, Illinois. During the same period, defendant and his wife, Valorie Theis, lived at the homeless shelter with their son, Max, and Valorie's daughter, M.L., who was then about 5½ years old.

¶ 4    At trial, Valorie testified that she recalled giving videotaped interviews to police on March 28, 2005, and in June 2008, but could not remember the statements she made during the interviews. Valorie testified that she had been addicted to Vicodin and that she still loved defendant and did not want him to go to prison. Valorie testified that she was testifying pursuant to a plea agreement regarding her guilty plea for predatory criminal sexual assault of her daughter, M.L. In exchange for her testimony, Valorie received a sentence of 30 years in prison instead of natural life. Valorie had a cellmate named Lynda Larson while in prison, but Valorie could not recall what they discussed.

¶ 5        De Kalb police detective Mark Nachman testified as follows. On March 28, 2005, he received a call and brought Valorie from the Harbor Inn Motel to the De Kalb police department for a videotaped interview. Detective Nachman recounted the details of Valorie's videotaped interview, which was admitted into evidence and published to the jury.

¶ 6        The March 2005 videotaped interview depicts Valorie stating the following. Defendant touched S.C.'s penis, sucked on S.C.'s penis, placed his finger in S.C.'s anus, and told Valorie to place her finger in S.C.'s anus; Valorie complied. Both defendant and Valorie used lubricant while penetrating S.C. Defendant placed his penis in S.C.'s anus and ejaculated on S.C.'s body.

¶ 7        Detective Nachman also testified that, in June 2008, Valorie provided a second interview that was recorded on a DVD. Valorie's attorney and an assistant State's Attorney were present during the recorded interview. Detective Nachman recounted the details of this interview, which was admitted into evidence and published to the jury.

¶ 8        The June 2008 recorded interview depicts Valorie stating the following. Defendant had vaginal and anal intercourse with M.L. 30 to 40 times at the Hope Haven homeless shelter, at least once a week. Defendant got mad at M.L., especially for crying, and would punish her by putting anal beads, a vibrator, and a dildo in M.L.'s vagina and anus. Valorie saw defendant use each device on M.L. between five and seven times. Defendant also placed his fingers into M.L.'s anus while wearing latex gloves. Defendant was physically and sexually abusive to Valorie and was jealous of the attention Valorie showed M.L. On several occasions, when M.L. told Valorie that she did not like defendant, he punished M.L. by making her place her mouth on his penis.

¶ 9        During the recorded interview Valorie also stated that M.L. was curious about sex and that Valorie and M.L. occasionally performed sex acts such as touching each other's breasts and vaginas.

¶ 10       Lynda Larson, who was housed on Valorie's cell block, testified that Valorie told her the following. Valorie was in prison for molesting S.C. and M.L. Larson testified that Valorie told her that defendant "bit [S.C.'s] penis and played with his anus prior to sodomy." Valorie "fingered [M.L.] because she was fearful of [defendant]." Although Valorie was addicted to Vicodin, "she was not under the influence at the time." Valorie repeatedly told Larson that she had been truthful with the police.

¶ 11       Detective Nachman also testified that, in March 2005, he interviewed defendant and the interview was videotaped. Prior to the interview, defendant was provided *Miranda* warnings, both orally and in writing, and defendant signed a *Miranda* waiver form. Detective Nachman was trained as an interrogator to notice body language, eye contact, and strength of denials. During the interview, defendant "turned away from [Detective Nachman]. He wouldn't look [Detective Nachman] in the eyes. He was covered up. He was sad. At some point he cried, talked about how his life was over." Detective Nachman also testified that defendant "continuously" asked for a cigarette. Detective Nachman testified that he "talked to [defendant] about him having his mouth on [S.C.'s] penis, and his response was, 'I can't picture that,' which [Detective Nachman] found noteworthy." Defendant "[i]nitially denied doing anything and made the statement that he never changed [S.C.'s] diaper, and that was

unsolicited without me asking him anything about changing diapers." Without objection, the entire two-hour videotaped interview was admitted into evidence and published to the jury.

¶ 12     The videotaped interview of defendant depicts the following. At first, defendant denied changing S.C.'s diaper. Later, defendant admitted changing his diaper. Defendant stated that he accidentally "pinched" S.C.'s penis. Detective Nachman told defendant more than once that police had physical evidence, that Valorie told Detective Nachman the truth about what had happened, that he knew that defendant had put his mouth on S.C.'s penis and put his own penis into S.C.'s anus. Detective Nachman also told defendant more than once that he knew defendant was lying and that more happened between him and S.C. than he admitted. Detective Nachman told defendant that this was his opportunity to make himself look like an honest person who made one mistake rather than a true sexual predator. Defendant denied doing anything beyond pinching S.C.'s penis.

¶ 13     Prior to trial, the trial court admitted statements that S.C. made to Lewis, pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10 (West 2004)). Lewis testified that S.C. was born at the Hope Haven homeless shelter on January 20, 2003. Defendant and Valorie occasionally watched S.C. while Lewis worked and Lewis's mother was unavailable. After defendant and Valorie watched S.C. for one week in March 2005, S.C.'s demeanor changed "drastically." Prior to that week, S.C. was "very playful" and "very happy." S.C. liked to roll around on the floor and liked when Lewis gave him "raspberries." After the week in March 2005, S.C. did not like being touched below his "lower back area" when Lewis gave S.C. a bath and did not like having his diaper changed. Prior to the week in March 2005, it was easy to change his diaper. The first day after defendant and Valorie watched S.C. for the week in March 2005, while changing S.C.'s diaper Lewis tried to blow S.C. "raspberries" on his tummy, but, instead of S.C.'s normal reaction, he started "flipping and thrashing" and said "No Mommy. Owie, owie." S.C. then threw himself off the bed and split his head open on an end table. S.C. also began looking uncomfortable and attempted to hold his bowel movements. S.C. had never acted like that before.

¶ 14     Lewis testified that, before the week in question in March 2005, S.C. told Lewis when he soiled his diaper and changing his diaper "was a quick procedure." After the week in question, S.C. walked around for hours with soiled diapers and refused to allow Lewis to touch him "anywhere" during diaper changes.

¶ 15     Lewis also testified that S.C. spoke "pretty well." Lewis asked S.C. if "[defendant] or somebody else" had touched him. S.C. replied, "I bite [defendant]." Lewis asked, "why did you bite [defendant]?" S.C. answered, "[defendant] bite me." When Lewis asked S.C. where defendant bit him, S.C. lifted his shirt and touched his tummy. Lewis asked S.C. if defendant or Valorie had touched him anywhere else, and S.C. touched his penis and said, "[defendant] touch my pee" or "[defendant] bite my pee."

¶ 16     Lewis also testified that defendant "wanted to spend a lot of time with S.C." and always offered to baby-sit, play with, and bathe S.C. and change his diapers. Valorie became angry with Lewis when she asked someone else to baby-sit for S.C. On March 30, 2005, Lewis went to the police and filed a report.

¶ 17    Sangita Rangala, an expert in pediatric sexual abuse, testified that she examined S.C. on April 4, 2005. Doctor Rangala found a loss or decrease in the normal folds around the anus, but there was no way to know what caused S.C.'s condition based solely on her examination.

¶ 18    Theresa Sanchez, a friend of defendant and Valorie, testified that, on March 25, 2005, she began caring for Max. Florence Sternberg, defendant's mother, was caring for M.L. They went to a hotel room, where defendant had been staying, to pick up the children's things. In the hotel room they found a plastic bag containing hemorrhoidal "[c]ream, a lubricant of some sort, and a rubber glove," which Sanchez gave to police.

¶ 19    Sternberg testified that, while in defendant's hotel room, defendant called and asked if "the bitch" was there, referring to Valorie. Defendant said, "[t]he stupid bitch sold me down the river. She sang like a bird and she's going to cost me life in prison." He also said, "I kept my mouth shut like I told her to do, but no, she didn't listen to me."

¶ 20    Sternberg testified that Valorie was caring for M.L. until her arrest on March 28, 2005. When Sternberg went to defendant's hotel room with Sanchez to get the children's things, she found a blue bag filled with toys. When Sternberg opened the blue bag at home and pulled out a black bag from the larger blue bag, M.L.'s eyes "got really big and she started shaking." M.L. "[k]ept yelling, 'no, no, no.' " Sternberg put the bag behind a chair and said, "[i]t's gone," but M.L. continued to shake and ran to her room. Sternberg later discovered that the black bag contained a "dildo, some ointments and some other things." Sternberg gave the items to police.

¶ 21    Sternberg also testified that, when Detective Nachman came to the house to collect a DNA sample from M.L., she "was excited." Sternberg and M.L. had "practiced DNA." However, as soon as Detective Nachman put on rubber gloves, M.L. began to cry, ran to her room, and locked the door. M.L.'s DNA was later obtained from her toothbrush.

¶ 22    Detective Nachman testified that, when he came to Sternberg's home to collect a DNA sample from M.L. and put on latex gloves, M.L. screamed, ran to her room, and locked the door. No amount of coaxing could get her out of her room. The police eventually obtained a sample of M.L.'s DNA from her toothbrush.

¶ 23    Toya Jones, a director at the Hope Haven homeless shelter, testified that Lewis, S.C., defendant, Valorie, M.L., and Max were all residents at Hope Haven. In early 2005, Lewis was "extremely upset" and came to Jones regarding changes in S.C.'s behavior. Jones, who saw S.C. every day, noticed a change as well. S.C. would not speak or play and instead he "just clung to [Lewis] a lot" and would not "allow anybody to touch him." Before the change, S.C. was a "happy little guy."

¶ 24    Jones also testified that she did not recall ever hearing M.L. speak; she was "really withdrawn" and "just kind of clung" to her mother. Defendant worked a nighttime job, arrived at the shelter at about 9:30 p.m., and slept until noon. Defendant usually awoke with M.L., "Valorie and sometimes [S.C.]"

¶ 25    Cynthia Cale, a forensic DNA analyst, testified that she found M.L.'s, Valorie's, and, possibly, defendant's DNA on the anal beads.

¶ 26    After closing argument, the trial court instructed the jury. After deliberation, the jury found defendant guilty on all four counts. The trial court sentenced defendant to 3

mandatorily consecutive 20-year prison terms for predatory criminal sexual assault and an additional consecutive 5-year term for aggravated criminal sexual abuse.

¶ 27                                    II. ANALYSIS

¶ 28                        A. Defendant's Videotaped Interrogation

¶ 29    We begin by considering whether the trial court erred by admitting into evidence defendant's videotaped police interview. Defendant argues that it was inadmissible because it contained Detective Nachman's hearsay assertions and opinions that were admitted as substantive evidence, violated defendant's right of confrontation, and invaded the province of the jury. However, because defendant failed to object to the admission of the videotape at trial and failed to raise the issue in his posttrial motion, the issue is forfeited. See *People v. Johnson*, 238 Ill. 2d 478, 484 (2010). Thus, defendant urges us to review this issue under the plain-error doctrine and argues that defense counsel was ineffective because she failed to preserve the allegedly erroneous admission of the videotape and failed to request a limiting instruction.

¶ 30    Under the Illinois plain-error doctrine, a reviewing court may consider a forfeited claim when:

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007) (citing *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005)).

However, where no error occurs, there cannot be plain error. *People v. Nicholas*, 218 Ill. 2d 104, 121 (2005). "Evidentiary rulings are within the sound discretion of the trial court and will not be reversed unless the trial court has abused that discretion." *People v. Caffey*, 205 Ill. 2d 52, 89 (2001). "An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *Caffey*, 205 Ill. 2d at 89.

¶ 31    Defendant argues that the videotape of his interview was inadmissible because it contained Detective Nachman's hearsay assertions and opinions that were admitted as substantive evidence. In his brief, defendant cites the following portions of his videotaped interview.

> "DETECTIVE NACHMAN: I know some things happened between you and [S.C.]. Alright. I want to know why. *** You have to be honest with me about it, what am I supposed to think?
>
> DEFENDANT: That I did it.
>
> DETECTIVE NACHMAN: No, I know you did it. I'm going to think that you're a stone-cold predator. *** I'm saying something happened one time. It's overwith [*sic*]. And I'm not saying I believe it's ever going to happen again. But you have to prove that to me. You have to tell me why things happened that day. I'm not asking you if things

-6-

happened. I know things happened. That's not an issue.

DEFENDANT: You've already accused me of doing it when I have no clue what I've done or anything else.

DETECTIVE NACHMAN: Things happened between you and [S.C.] and Valorie.

* * *

DETECTIVE NACHMAN: I know things have happened without either of you telling me. Because there's physical evidence. Period. Right now all you got is what I already know and what Valorie is telling me and you telling me nothing happened makes you look not good.

DEFENDANT: Of course she's saying that I did it or did this or she did this or whatever, she's crazy because she didn't do nothing and I didn't do nothing so however you're going to–

DETECTIVE NACHMAN: I already know that's not true, John. We came to your door because we've been working this investigation for quite some time. [S.C.] was honest with me about what happened. We didn't come talk to you for no reason."

¶ 32    Defendant concedes that his statements were admissible as an exception to the hearsay rule. *People v. Woods*, 292 Ill. App. 3d 172, 178 (1997). Further, defendant's argument that Detective Nachman's statements were hearsay is incorrect. "It is well established that a taped conversation or recording, which is otherwise competent, material and relevant, is admissible so long as it is authenticated and shown to be reliable through proper foundation." *People v. Griffin*, 375 Ill. App. 3d 564, 570 (2007). A taped conversation is not hearsay; rather, it is a "mechanical eavesdropper with an identity of its own, separate and apart from the voices recorded." *Griffin*, 375 Ill. App. 3d at 571. In this case, defendant does not argue that the State failed to lay a proper foundation for the admission of the videotaped interrogation. Therefore, Detective Nachman's alleged hearsay statements during defendant's videotaped interview were admissible.

¶ 33    Further, hearsay is an out-of-court statement offered to establish the truth of the matter asserted. *People v. Robinson*, 391 Ill. App. 3d 822, 834 (2009). Thus, an out-of-court statement that is necessary to show its effect on the listener's mind or explain the listener's subsequent actions is not hearsay. *Robinson*, 391 Ill. App. 3d at 834. In this case, absent Detective Nachman's statements, defendant's answers would have been nonsensical. Thus, for the two reasons stated above, Detective Nachman's statements were not hearsay and the trial court did not err in failing to, *sua sponte*, redact his statements from the videotaped interview. Accordingly, defendant cannot establish plain error regarding this issue. See *Nicholas*, 218 Ill. 2d at 121.

¶ 34    Next, defendant argues that plain error occurred because the admission of Detective Nachman's statements during defendant's videotaped interview violated defendant's right of confrontation under the United States and Illinois Constitutions (U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8). The United States and Illinois Constitutions ensure defendants the right to confront the witnesses against them. U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8. However, admissible evidence that is not hearsay does not implicate the right of confrontation under either the United States or the Illinois Constitution. *Crawford v.*

*Washington*, 541 U.S. 36, 59 n.9 (2004); *People v. Peoples*, 377 Ill. App. 3d 978, 983-84 (2007). In this case, for the reasons discussed above, we have already determined that Detective Nachman's statements during defendant's videotaped interrogation did not constitute hearsay. See *Peoples*, 377 Ill. App. 3d at 983-84, 989. Further, defendant's confrontation rights were not implicated because Detective Nachman was subject to cross-examination. See *People v. Bryant*, 391 Ill. App. 3d 1072, 1081-82 (2009). Accordingly, because no error occurred, no plain error occurred; therefore, defendant forfeited this issue on appeal. See *Nicholas*, 218 Ill. 2d at 121.

¶ 35       Defendant argues that plain error occurred because the admission of Detective Nachman's opinions, stated during defendant's videotaped interview, invaded the province of the jury. Defendant cites *People v. Munoz*, 398 Ill. App. 3d 455 (2010), *People v. Crump*, 319 Ill. App. 3d 538 (2001), and *People v. McClellan*, 216 Ill. App. 3d 1007 (1991), to support his argument.

¶ 36       In *Munoz*, a police officer testified that, during his interview of the defendant, the police officer told the defendant that he did not believe the defendant's version of the events. *Munoz*, 398 Ill. App. 3d at 486-87. The police officer also testified that he did not believe the defendant ever told him the truth. *Munoz*, 398 Ill. App. 3d at 487. The appellate court held that the admission of the first statement was not error, because it could have "explained the sequential logic of [the] investigation." *Munoz*, 398 Ill. App. 3d at 488. The appellate court held that only the second statement invaded the province of the jury because the police officer told the jury whom to believe. *Munoz*, 398 Ill. App. 3d at 488. In this case, the statements at issue are similar to the first statement in *Munoz* because Detective Nachman's opinions about defendant's guilt were made to defendant during the interview and explained the logic of the interview and defendant's answers. Thus, *Munoz* is inapplicable to the case at bar and Detective Nachman's statements were properly admitted.

¶ 37       Similarly, neither *Crump* nor *McClellan* is applicable to this case, because the police officers in *Crump* and *McClellan* essentially testified that they believed the defendants were guilty. *Crump*, 319 Ill. App. 3d at 544; *McClellan*, 216 Ill. App. 3d at 1013. In this case, Detective Nachman's statements were made in the context of a videotaped interview to explain the logic of the interview and defendant's answers. In *Crump* and *McClellan*, the police officers' opinions of the defendants' guilt were given as testimony; therefore, the statements were not necessary for any proper purpose. Thus, neither *Crump* nor *McClellan* is controlling.

¶ 38       Defendant also argues that the trial court erred by admitting the videotaped interview as substantive evidence because it failed to provide a limiting instruction to the jury. However, because defendant failed to tender a limiting instruction, this issue is forfeited on appeal. See *People v. Mulvey*, 366 Ill. App. 3d 701, 714 (2006). Further, the trial court did not err by failing to *sua sponte* give a limiting instruction. See *Peoples*, 377 Ill. App. 3d at 987-88 (holding that the trial court was not required to, *sua sponte*, instruct the jury that alleged hearsay testimony was admissible only for impeachment purposes and not as substantive evidence). Accordingly, defendant cannot establish plain error regarding this issue. See *Nicholas*, 218 Ill. 2d at 121.

¶ 39      In addition, defendant argues that defense counsel was ineffective for failing to object to the admission of defendant's videotaped interview. We apply the *Strickland* test to determine whether trial counsel rendered ineffective assistance. See *Strickland v. Washington*, 466 U.S. 668 (1984). Under the *Strickland* test, a defendant must show that: (1) counsel's performance was unreasonable, and (2) but for the error, there is a reasonable probability that the outcome would have been different. *Strickland*, 466 U.S. at 689-94. Both prongs of *Strickland* must be met, and the failure to satisfy either prong precludes a finding of ineffective assistance of counsel. *People v. Patterson*, 192 Ill. 2d 93, 107 (2000).

¶ 40      A defense counsel's decision not to object to the admission of purported hearsay testimony involves a matter of trial strategy and, typically, will not support a claim of ineffective assistance of counsel. See *People v. Johnson*, 331 Ill. App. 3d 239, 248 (2002). In this case, defense counsel used the alleged hearsay testimony as part of her trial strategy. During closing argument, she argued that Valorie committed the offenses against S.C. and lied about defendant's involvement to Detective Nachman, who believed her. Defense counsel quoted from the videotape, essentially arguing that Detective Nachman attempted to coerce a confession from defendant but was unsuccessful because defendant repeatedly denied any wrongdoing. In addition, the jury heard defendant's denials and exculpatory statements without the uncertainties involved in having defendant testify. The fact that defense counsel's strategy was ultimately unsuccessful does not render it unreasonable. See *People v. Skillom*, 361 Ill. App. 3d 901, 913-14 (2005). Thus, defendant's claim of ineffective assistance of counsel fails the first prong of the *Strickland* test. *Strickland*, 466 U.S. at 689-94.

¶ 41      Defendant's claim of ineffective assistance of counsel also fails the second prong of the *Strickland* test because the evidence against him was overwhelming. The jury found defendant guilty of three counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2004)), wherein the State alleged that defendant placed his finger in S.C.'s anus, he placed his penis in S.C.'s anus, and he placed his penis in S.C.'s mouth. The jury also found defendant guilty of one count of aggravated criminal sexual abuse (720 ILCS 5/12-16(c)(1) (West 2004)), wherein the State alleged that defendant touched S.C.'s penis for the purpose of sexual arousal.

¶ 42      During Valorie's March 2005 videotaped interview, she stated that defendant placed his finger in S.C.'s anus, sucked on S.C.'s penis, touched S.C.'s penis, and penetrated S.C.'s anus with his penis and then ejaculated on S.C.'s body.

¶ 43      In addition, S.C.'s mother testified that, after defendant and Valorie baby-sat S.C. for a week in March 2005, S.C.'s demeanor drastically changed. The previously happy and playful boy no longer enjoyed being tickled or bathed by his mother. He no longer wanted his mother to change his diaper, did not want his mother to give him "raspberries" on his tummy, nor did he allow his mother to touch him. S.C. told his mother that "I bite [defendant]" "[because] [defendant] bite me." When asked where defendant bit him, S.C. touched his penis and said, "[defendant] touch my pee" or "[defendant] bite my pee."

¶ 44      In light of this evidence, it is unlikely that the jury's verdict would have been different but for the admission of defendant's videotaped interrogation into evidence. Thus,

defendant's claim of ineffectiveness regarding defense counsel's failure to object to admission of the videotaped interrogation fails. See *Strickland*, 466 U.S. at 687.

¶ 45   Defendant also argues that defense counsel was ineffective because she failed to request the trial court to instruct the jury that Detective Nachman's statements during defendant's videotaped interview "could not be considered for [the] truth or as substantive evidence of guilt." As noted above, the evidence of defendant's guilt was overwhelming. Therefore, even if a limiting instruction had been given, there is no reasonable probability that the outcome of the trial would have been different. Thus, defendant's claim of ineffective counsel regarding the failure to request a limiting instruction fails. See *Strickland*, 466 U.S. at 687.

¶ 46                    B. Testimony Regarding Defendant's "Body Language"

¶ 47   Next, defendant argues that the trial court erred by admitting Detective Nachman's testimony regarding defendant's body language and that the prosecutor improperly commented during closing argument regarding this testimony. However, because defendant failed to object at trial to the testimony and comments at issue and failed to raise the issues in his posttrial motion, the issue is forfeited. See *Johnson*, 238 Ill. 2d at 484. Defendant urges us to review these issues under the plain-error doctrine and argues that defense counsel was ineffective because she failed to preserve these issues for review.

¶ 48   Defendant argues that plain error occurred because Detective Nachman testified that defendant would not look him in the eye, defendant's responses were few and far between, it took him some time before he "actually said any kind of denial," after defendant smoked a cigarette he became more aggressive, and after defendant watched a videotape of Valorie he refused to speak with Detective Nachman any longer. It is well settled that testimony regarding a defendant's silence or nonverbal conduct during questioning subsequent to a valid waiver of rights is admissible. See *People v. Hart*, 214 Ill. 2d 490, 514-15 (2005). Accordingly, defendant cannot establish plain error regarding this issue. See *Nicholas*, 218 Ill. 2d at 121.

¶ 49   Defendant also argues that plain error occurred because Detective Nachman testified that defendant's body language was "noteworthy." However, the record does not support defendant's characterization of Detective Nachman's testimony. The record reveals that the prosecutor asked Detective Nachman, "Did [defendant] use any other phrases that you remember as being somewhat –that stuck out in your mind during this interview?" Detective Nachman replied as follows:

"At one point he–I mean, I stated earlier [defendant] said his life was over, he's going back to jail. Again, his head was down, he was upset. At one point I talked to [defendant] about him having his mouth on [S.C.'s] penis, and his response was, 'I can't picture that,' which I found noteworthy."

¶ 50   Thus, what Detective Nachman found "noteworthy" was defendant's statement, "I can't picture that." Contrary to defendant's characterization, Detective Nachman did not testify that he found defendant's body language noteworthy. Due to defendant's mischaracterization of Detective Nachman's testimony, we need not address defendant's argument regarding this issue.

¶ 51 Next, defendant argues that plain error occurred because the prosecutor improperly "commented on [Detective] Nachman's characterization of [defendant's] body language and invited the jury to interpret it as evidence of his guilt." The comments at issue are as follows:

"What's the first image you see of this defendant when he's being interviewed by Detective Nachman? Is he sitting there open and honest? No, he's got his head in his hands. He's sniveling. Is that the demeanor of an innocent man, a man who was caught up by the mistakes and lies of his wife? I don't think so.

\* \* \*

Why don't we look at body language. An innocent man meeting up with the detective being asked questions. Does that innocent man sit straight up or a woman, do they sit straight up in their chair? Do they look at the detective? Do they look that detective square in the eye and say, 'No, I didn't do it?' Or does a guilty man slouch in his chair, hunch over, head in his hands, shielding his face from the detective. Is that what a guilty man would do? That's a question for you to answer.

But what did the defendant do during the course of his interview? Did he slouch? Yep. Did he have his head in his hands? Sure, he did. Did he shield his head from Detective Nachman? Did he look Detective Nachman in the eyes at all?"

¶ 52 It is well established that the State is allowed a great deal of latitude in closing argument. See *People v. Wheeler*, 226 Ill. 2d 92, 122 (2007). It is generally improper for a prosecutor to express a personal opinion about a case. *People v. Johnson*, 114 Ill. 2d 170, 198 (1986). However, a prosecutor may comment on the evidence presented and any fair and reasonable inferences it yields. *People v. Runge*, 234 Ill. 2d 68, 142 (2009).

¶ 53 In this case, it is important to note that the comments defendant challenges were made by the prosecutor during his rebuttal closing argument, after defense counsel's closing argument. It is well established that a prosecutor may respond to comments made by defense counsel that invite a response and may comment on credibility. *People v. Moss*, 205 Ill. 2d 139, 184 (2001); *People v. Anderson*, 407 Ill. App. 3d 662, 677 (2011). To determine whether a prosecutor's comment is proper, courts must view such comment in context of the entire closing argument. *People v. Johnson*, 218 Ill. 2d 125, 141 (2005).

¶ 54 In this case, the prosecutor's comments were based on the evidence presented at trial and were invited by defense counsel's closing argument. In making her argument that Valorie acted alone, defense counsel argued that defendant's behavior was indicative of innocence, while Valorie's behavior was indicative of guilt. When commenting on defendant's admission that he pinched S.C.'s penis and Detective Nachman's questioning of defendant regarding that issue, defense counsel stated:

"[Defendant said,] 'Well I didn't mean to hurt [S.C.]' What is [defendant] doing with his hand? He's holding his hand like this. Can't see it all that well because your [*sic*] positioning. He's holding his hand like this, like he's lifting it up and he's talking about wiping [S.C.]"

¶ 55 When commenting on Valorie's reaction to the anal beads and other items found in the bag, defense counsel stated:

"[During the first interview, Valorie] had no problem identifying them, she had no trouble identifying them. No problem. But then you get to the June 18th interview and, 'Oh, I'm shy. I'm so shy. I don't know what they're called.' *** *Suddenly, she's demure and prim and proper*." (Emphasis added.)

¶ 56   Because defense counsel argued that defendant's body language indicated his innocence or truthfulness and Valorie's body language indicated her guilt and deception, defense counsel invited the prosecutor's comments. Further, the prosecutor's comments were based on the facts in evidence. Thus, no error occurred and, therefore, defendant cannot establish plain error regarding this issue. See *Nicholas*, 218 Ill. 2d at 121.

¶ 57   Defendant cites *People v. Henderson*, 394 Ill. App. 3d 747 (2009), and *United States v. Williams*, 133 F.3d 1048 (7th Cir. 1998), to support his argument that error occurred because Detective Nachman testified regarding defendant's body language and the prosecutor improperly commented regarding defendant's body language.

¶ 58   In *Henderson*, a police detective testified that defendant's body language indicated that defendant was deceptive. *Henderson*, 394 Ill. App. 3d at 750. The appellate court held that the testimony was inadmissible because the detective opined that "defendant's story was not true." *Henderson*, 394 Ill. App. 3d at 753. In this case, Detective Nachman did not testify that defendant's body language indicated that defendant was deceptive or that his story was not true. Detective Nachman only described defendant's conduct during his interview. Thus, *Henderson* is not applicable to this case.

¶ 59   In *Williams*, a federal agent testified about the defendant's demeanor and reactions when he was told that a witness identified him as one of the robbers in a robbery. *Williams*, 133 F.3d at 1050. The Seventh Circuit held that admission of this evidence was improper because the federal agent purported to be a "human lie detector" by observing the defendant's behavior. *Williams*, 133 F.3d at 1053. In this case, Detective Nachman did nothing more than describe defendant's conduct. Further, in *Williams*, the jury had only the federal agent's interpretation of the defendant's conduct on which to rely. In this case, the jury observed defendant's conduct and demeanor on the videotape of defendant's interrogation. Therefore, "the jury ultimately chose to perceive the contents" of the videotape. See *People v. Bryant*, 391 Ill. App. 3d 228, 245 (2009).

¶ 60   Defendant also cites *Doyle v. Ohio*, 426 U.S. 610 (1976), to argue that Detective Nachman's testimony and the prosecutor's comments infringed on defendant's right to remain silent. In *Doyle*, the defendants were silent at the time of their arrests. The United States Supreme Court held that the defendants' silence could not be used for impeachment purposes. *Doyle*, 426 U.S. at 619. However, in *Hart*, the Illinois Supreme Court later explained that, when a defendant waives his *Miranda* rights and makes statements to police, " '[a]s to the subject matter of his statements, the defendant has not remained silent at all.' " *Hart*, 214 Ill. 2d at 514 (quoting *Anderson v. Charles*, 447 U.S. 404, 408 (1980)). Because defendant in this case did not remain silent, his right was not infringed upon. *Hart*, 214 Ill. 2d at 514. Thus *Doyle* is not applicable to this case.

¶ 61   Even if error occurred by the admission of Detective Nachman's testimony regarding defendant's body language and the prosecutor's comments at issue, defendant cannot

establish reversible plain error. As previously stated, the evidence was not closely balanced; rather, the evidence of defendant's guilt was overwhelming. Thus, defendant cannot establish the first prong of the plain-error analysis. Accordingly, we will consider only whether the alleged errors are of such magnitude that defendant was denied a fair trial and the remedying of such errors is necessary to preserve the integrity of the judicial process. *People v. Ceja*, 204 Ill. 2d 332, 357 (2003). When viewed in the context of the entire case, the admission of the testimony and the prosecutor's comments did not affect the fairness of defendant's trial or challenge the integrity of the judicial process. We also note that the trial court instructed the jury that closing arguments are not evidence and that arguments not based on the evidence are to be disregarded. Further, the prosecutor's allegedly improper comments were not overly extensive. Accordingly, defendant cannot establish reversible plain error. See *People v. Hillsman*, 362 Ill. App. 3d 623, 639-40 (2005).

¶ 62    Defendant also argues that defense counsel was ineffective because she failed to preserve these issues on appeal. As previously discussed, the evidence of defendant's guilt was overwhelming. Thus, there is not a reasonable probability that the outcome of the trial would have been different absent Detective Nachman's testimony and the prosecutor's comments at issue. Accordingly, defendant cannot satisfy the second prong of the *Strickland* test and, therefore, cannot establish ineffective assistance of counsel. See *Strickland*, 466 U.S. at 687.

¶ 63                                C. Other-Crimes Evidence

¶ 64    Next, defendant argues that the trial court erred by admitting an extensive and overwhelming amount of evidence of other crimes that defendant allegedly committed against M.L. Defendant argues that the evidence was improper because the volume of evidence overwhelmed the evidence of the crimes charged.

¶ 65    Before trial and over defendant's objection, the trial court granted the State's motion to admit evidence of defendant's alleged other crimes against M.L. pursuant to section 115-7.3 of the Code of Criminal Procedure (725 ILCS 5/115-7.3 (West 2004)). A trial court's decision to admit other-crimes evidence will not be reversed unless the court abused its discretion. *People v. Donoho*, 204 Ill. 2d 159, 182 (2003). We will find that the trial court abused its discretion if the court's determination is unreasonable, arbitrary, or fanciful, or if no reasonable person would adopt the court's view. *Donoho*, 204 Ill. 2d at 182. Where the other-crimes evidence meets the preliminary statutory requirements, it is admissible if (1) it is relevant; and (2) its probative value is not outweighed by its prejudicial effect. *Donoho*, 204 Ill. 2d at 177-78. In weighing probative value against prejudicial effect, a court may consider "(1) the proximity in time to the charged or predicate offense; (2) the degree of factual similarity to the charged or predicate offense; or (3) other relevant facts and circumstances." 725 ILCS 5/115-7.3(c) (West 2004).

¶ 66    In this case, the testimony established that defendant committed the alleged offenses against M.L. around the same time that he committed the offenses against S.C. The testimony also established that the facts regarding the offenses, while not identical, were similar; anal penetration with defendant's penis, digital penetration of the anus, and oral sex acts; defendant's control over the victims; the location of the homeless shelter; defendant's motive

-13-

of sexual gratification; and the presence of Valorie. Thus, the factual similarities were significant. Accordingly, the relevance and probative value were significant. See *Donoho*, 204 Ill. 2d at 184 (as factual similarities increase, so does the relevance or probative value).

¶ 67    Defendant argues that the evidence of defendant's other crimes against M.L. was more prejudicial than probative because it was too extensive and overwhelmed the evidence of the charged offenses. Defendant cites *People v. Cardamone*, 381 Ill. App. 3d 462 (2008), to support his argument. However, *Cardamone* is distinguishable from the case at bar.

¶ 68    In *Cardamone*, the State presented testimony regarding as many as 257 incidents of uncharged acts in a complex case involving over 100 witnesses. *Cardamone*, 381 Ill. App. 3d at 491. We held that the evidence should not have been admitted, because "there is a strong possibility that the evidence could have led to juror confusion and that the jury could have used one complainant's credible testimony about uncharged conduct to bolster weak testimony by another complainant concerning the actual charges." *Cardamone*, 381 Ill. App. 3d at 494. The facts in this case were easier to understand than those in *Cardamone*. There were far fewer witnesses and far fewer alleged acts. Therefore, the risk of juror confusion was minimal. Further, the evidence against defendant regarding the charged offenses against S.C. was overwhelming. Thus, the risk that the jury could have relied on credible testimony about uncharged conduct regarding M.L. to bolster weak evidence of the charges regarding S.C. was slight. Accordingly, *Cardamone* is not applicable to this case and the trial court did not abuse its discretion by admitting evidence of defendant's other crimes against M.L.

¶ 69    Defendant argues that the court should not have admitted the "sex toys" into evidence and provided them to the jury, because there was no allegation that these were used on S.C. However, defendant failed to object to the admission of this evidence at trial and to this evidence being given to the jury to aid in their deliberation. Thus, this issue is forfeited on appeal. See *People v. Woods*, 214 Ill. 2d 455, 470 (2005).

¶ 70    Lastly, defendant argues that Valorie's statements were "wholly incredible." However, it was for the jury to resolve Valorie's credibility in light of any inconsistencies in her statements. See *People v. Rojas*, 359 Ill. App. 3d 392, 398 (2005). Thus, any inconsistencies in Valorie's statements do not warrant reversal.

¶ 71                                    III. CONCLUSION

¶ 72    For the reasons stated, we affirm defendant's predatory criminal sexual assault and aggravated criminal sexual abuse convictions.

¶ 73    Affirmed.